[Nos. 39860-5-II; 39943-1-II.   Division Two.   September 13, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. JoJo HAMILTON EVANS, SR., *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. JARRETT REEDY, *Appellant*.

638

*Valerie Marushige*; and *Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Brian N. Wasankari, Deputy*, for respondent.

¶1 ARMSTRONG, J. — A jury convicted Jarrett Reedy and JoJo Hamilton Evans Sr. of, inter alia, first degree robbery as accomplices. On appeal, Reedy and Evans argue that (1) the evidence is insufficient to sustain their robbery convictions and (2) the prosecutor improperly characterized the reasonable doubt standard during closing argument. We agree that the prosecutor's comments during closing were improper and not curable by the instructions. Accordingly, we reverse and remand for retrial.

## FACTS

¶2 On the afternoon of November 5, 2008, Shalamar Erickson and Amber Sawyer-Jones went to a motel in the Lakewood area to buy and smoke methamphetamine from Erikson's friend, Travis Patterson. When they arrived at the motel, Erickson and Sawyer-Jones went to Patterson's room on the second floor. Erickson testified that Patterson was there with another man. Sawyer-Jones testified that there were three men in the room. Once inside, Erickson smoked some "meth" with the men. Report of Proceedings (RP) at 20. Sawyer-Jones testified that she abstained, despite telling an officer on the day of the incident that she went to the room to use methamphetamine. The women "hung around" for about 10 or 15 minutes. RP at 20, 48.

¶3 At the same time, undercover officers from the Lakewood Police Department were watching the motel room in preparation for a controlled narcotics buy. One of the officers, Jeff Martin, had a clear, unobstructed view of the room from his car. Officer Martin saw Evans leave the room on two occasions, head downstairs to a parked car, and return. The first time, Evans spent less than a minute in the car before returning to the room. The second time, he remained in the car for several minutes before heading back.

¶4 Erickson testified that as they were about to leave, a man entered the room and hit Patterson over the head with a handgun. Sawyer-Jones testified that someone entered the room with a handgun and told everyone that they were "getting jacked" and that he "wasn't playing." RP at 51. She further testified that the man hit one of the other men with the gun. Both women immediately ran out of the room, got in their car, and drove away.

¶5 Officer Martin testified that after Evans's second trip to the car, Evans returned to the room and knocked on the door. Officer Martin saw Reedy open the door to let Evans in. Less than two minutes later, the door opened rapidly and two women ran from the room followed by a man. The women ran down the stairs and entered a vehicle. After Officer Martin called for assistance, he saw Evans and Reedy leave the room and run down the corridor. At the bottom of the stairs, Evans ran to the left and Reedy ran to the right.

¶6 Officer Martin exited his vehicle, drew his weapon, and ordered Evans to the ground. Evans was standing by the front end of a parked vehicle and put his hands into the front pocket of his sweatshirt. When he removed them moments later, Officer Martin heard a "loud metal like clank or ping on the ground." RP at 154-55. Evans dropped to the ground and Officer Martin handcuffed him.

¶7 Officer Martin then joined two other officers who were pursuing Reedy. When he caught up, Officer Martin

saw Reedy drop something in a trash can. One of the officers ordered Reedy to the ground, and the other placed him in handcuffs.

¶8 Once the two suspects were in custody, Officer Martin recovered a handgun from under the vehicle where he had apprehended Evans and a handgun and a large package of methamphetamine from the trash can near where Reedy had been apprehended.

¶9 The police stopped Erickson and Sawyer-Jones several blocks from the motel. Officer Darcy Olsen transported Erickson back to the motel where, according to Officer Olsen, Erickson identified both Evans and Reedy, explaining that "both of them were participants in different—in different ways. They were both there, but one did not commit the robbery or the assault; the other one did." RP at 101, 111. Erickson testified, however, that she did not remember returning to the motel or identifying anybody at the scene. She claimed that she was unable to recall talking to the police because she was "pretty high." RP at 27.

¶10 After the suspects were taken into custody, the officers saw Patterson leave the motel room. Officers David Crommes and Martin stopped Patterson, who had lacerations on his head and face. They tried to question him, but Patterson was not willing to tell the officers what, if anything, had been taken from him.

¶11 The State charged Evans with first degree burglary, first degree robbery, second degree assault, unlawful possession of a controlled substance with intent to deliver, possession of a stolen firearm, and unlawful possession of a firearm. The first three counts were charged with firearm enhancements. In addition, the State charged the burglary and robbery counts under an accomplice liability theory.

¶12 The State charged Reedy with first degree burglary, first degree robbery, unlawful possession of a controlled substance with intent to deliver, and first degree unlawful possession of a firearm. The first two counts were charged

with a firearm enhancement and with Reedy acting as an accomplice. The matters were consolidated for trial.

¶13 In closing argument the prosecutor declared that presumptive innocence "kind of stops once you start deliberating right? At that point, you start to evaluate evidence and decide if that has been overcome or not." RP at 339-40.

¶14 In discussing the role of the jury, the prosecutor said, "You decide who's telling the truth, who's being less than truthful." RP at 338. He followed this by describing how to weigh the testimony: "I would suggest to you that [a] person's probably being credible, right, saying, 'Geeze, I think it was this, but I don't know for sure,' and you guys got to decide then, well, is it true beyond a reasonable doubt or not?" RP at 338. He added, "Hold me to the burden of proof exactly. Says: Are you convinced beyond a reasonable element that—beyond a reasonable doubt that each element is true?" RP at 340.

¶15 Later, the prosecutor explained,

When you look at this testimony, I want you to peel back different layers of the onion to get to the truth, what you would swear you would do, all right?

And then once you decided what you know and what you don't know, okay, what you reasonably know in the total context, okay, what you don't know, then apply those elements and decide: Is that what happened? Is that not what happened?

RP at 344.

¶16 During his rebuttal, the prosecutor stated,

Run that loop of inferences that I talked about before about the elements, hold the State to its burden. Hold it exactly to its burden. Don't say, "I wish I had the universe," okay? Don't say, "I wish I had fingerprints," and then, "I wish we had fingerprints, I wish we had the video from the satellite," I talked about before.

. . . .

If you are—if you decide to decide, what you should be able to say, "I have a doubt about, okay, element X, and it's because of

this reason," fill in the blank, okay? And it should be a reason that comes from evidence or lack of evidence. And I suggest to you your instruction doesn't tell you to say, "Well, I wish I had more." Because let me tell you what, you are always going to wish you had more. Always going [to] be questions.

RP at 391.

¶17 The jury convicted Evans of first degree robbery, second degree assault, second degree unlawful possession of a firearm, and unlawful possession of a controlled substance.[1] It also found by special verdict that Evans was armed with a firearm during the commission of the robbery and assault.

¶18 The jury convicted Reedy of first degree robbery and the lesser included crime of unlawful possession of a controlled substance, and unlawful possession of a firearm. It also found that Reedy was armed with a firearm.

## ANALYSIS

¶19 Evans and Reedy argue that the prosecutor committed flagrant misconduct during closing argument by misstating the law on the presumption of innocence, misrepresenting the role of the jury, and minimizing the burden of proof.

¶20 Prosecutorial misconduct may deprive a defendant of his right to a fair trial. *See State v. Jones*, 144 Wn. App. 284, 290, 183 P.3d 307 (2008). A defendant claiming such misconduct must show both improper comments and resulting prejudice. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). If defense counsel fails

---

[1] The trial court dismissed the burglary charge for both defendants and dismissed Evans's possession of a stolen firearm charge.

to object to the misconduct at trial, we consider the issue waived on appeal unless the misconduct is so flagrant and ill intentioned that it evinces an enduring prejudice the trial court could not have cured by an instruction. *State v. Gregory*, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006).

## A. Improper Conduct

### 1. Presumption of Innocence

■ ■ ¶21 Reedy first argues that the prosecutor committed misconduct by misstating the presumption of innocence. Specifically, he impugns the prosecutor's statement that presumptive innocence "kind of stops once you start deliberating." RP at 340.

¶22 The presumption of innocence continues throughout the entire trial and may be overcome, if at all, only during deliberations. *State v. Venegas*, 155 Wn. App. 507, 524, 228 P.3d 813, *review denied*, 170 Wn.2d 1003, 245 P.3d 226 (2010) (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01 (3d ed. 2008)). In *Venegas*, 155 Wn. App. at 524, the prosecutor stated that the presumption of innocence erodes every time the jury hears evidence of the defendant's guilt. We held that the prosecutor committed flagrant misconduct by making an improper argument with no basis in law. *Venegas*, 155 Wn. App. at 525.

¶23 Here, the prosecutor's comment that the presumption "kind of stops" is just as troubling as the misconduct in *Venegas*. RP at 340. The presumption of innocence is the "bedrock upon which the criminal justice system stands." *State v. Bennett*, 161 Wn.2d 303, 315, 165 P.3d 1241 (2007). The presumption of innocence does not stop at the beginning of deliberations; rather, it persists until the jury, after considering all the evidence and the instructions, is satisfied the State has proved the charged crime beyond a reasonable doubt. Yet the prosecutor's comment invited the jury to disregard the presumption once it began deliberat-

ing, a concept that seriously dilutes the State's burden of proof.

## 2. Role of Jury

■ ¶24 Reedy also contends the prosecutor committed misconduct by suggesting that the jury has a duty to decide the truth of what happened. Reedy argues it is not the jury's function to decide "the truth" but, rather, to determine whether the State has met its constitutional burden of proving guilt beyond a reasonable doubt. Br. of Appellant (Reedy) at 23.

¶25 A prosecutor may argue to the jury that if it accepts one witness's version of the facts, it can reject conflicting testimony. *See State v. Wright*, 76 Wn. App. 811, 826, 888 P.2d 1214 (1995).[2] It is not, however, the jury's job to solve a case. Rather, "the jury's duty is to determine whether the State has proved its allegations against a defendant beyond a reasonable doubt." *State v. Anderson*, 153 Wn. App. 417, 429, 220 P.3d 1273 (2009). Thus, a prosecutor's request that the jury " 'declare the truth' " is improper. *Anderson*, 153 Wn. App. at 429.

¶26 The prosecution's exhortation to the jury "to get to the truth" is particularly troubling because the jury heard only State witnesses. Generally, weighing witness credibility arises in an adversarial context, allowing a jury to resolve conflicting testimony. *See Wright*, 76 Wn. App. at 826. The State can fairly argue that the jury should evaluate the credibility of its witnesses and the persuasive force of its evidence as compared to conflicting evidence from the defense. But the argument here invited the jury to overlook any credibility issues with the State's own witnesses by "[peeling] back [the] different layers of the onion to get to the truth," presumably those parts of the witnesses' testimony that supported the State's case. RP at 344. The prosecutor then urged the jurors to "apply those elements

---

[2] *Wright* was superseded by statute on grounds not relevant to this case.

and decide: Is [this] what happened? [I]s that not what happened." RP at 344. Considered together, these arguments suggested to the jury that it had an obligation to determine the truth and that it should disregard the less appealing parts of the State's witnesses' testimony.

¶27 In *Anderson*, 153 Wn. App. at 424, the prosecutor stated in closing argument that " 'by your verdict in this case, you will declare the truth about what happened on August the 21st of 2007 at the Save A Lot.' " Here, as in *Anderson*, the prosecutor miscast the jurors' role as one of determining what happened and not whether the State had met its burden of proof. Furthermore, the prosecutor admonished the jury not to ask for more evidence even though "you are always going to wish you had more." RP at 391. He emphasized this point by stating that the court's instruction "doesn't tell you to say, 'Well, I wish I had more.' " RP at 391. In doing so, the prosecutor aggravated the erroneous truth-seeking argument by suggesting that the jurors disregard weaknesses in the State's case.

### 3. "Fill in the Blank" Argument

¶28 Finally, both defendants claim the prosecutor relieved himself of the full weight of his burden of proof when he essentially told jurors that they had to be able to explain or specify a reason for their doubt. They argue that the "fill in the blank" comment constitutes reversible error under *Venegas*. Br. of Appellant (Evans) at 18; Br. of Appellant (Reedy) at 20.

¶29 The propriety of the "fill-in-the-blank" argument has been before us several times recently. We have consistently held the argument to be improper, reasoning that it subverts the presumption of innocence by implying that the jury has an initial affirmative duty to convict and that the defendant bears the burden of providing a reason for the jury not to convict. *State v. Emery*, 161 Wn. App. 172, 194, 253 P.3d 413 (2011); *State v. Johnson*, 158 Wn. App. 677, 684, 243 P.3d 936 (2010), *review denied*, 171 Wn.2d 1013

(2011); *Venegas*, 155 Wn. App. at 523-24; *Anderson*, 153 Wn. App. at 431. And as we have explained above, the problem was aggravated by the prosecutor's admonition to the jury not to ask for "more" because the court's instruction did not require it. RP at 391. This further diluted and shifted the State's burden of proof.

¶30 The prosecutor's arguments in closing cleverly mixed requests for the jury to "[h]old me to the burden of proof exactly" with subtle twists of the jury's role and the State's burden of proof, seemingly intended to make it easier for the jury to convict in two difficult cases. RP at 340. Yet a prosecutor is a quasi-judicial officer of the court, with an obligation to ensure that every defendant is fairly tried. *Jones*, 144 Wn. App. at 290. Measured against this standard, the prosecutor's comments overstepped the bounds of ethical advocacy.

## B. Prejudice

¶31 Although improper, we have not found that "fill in the blank" and "declare the truth" arguments are inherently flagrant and ill intentioned, causing incurable prejudice. *Emery*, 161 Wn. App. at 195. In both *Anderson* and *Emery*, we noted the strength of the State's evidence against the defendant: multiple witnesses and surveillance footage corroborated the State's version of events in *Anderson*, and multiple witnesses, as well as DNA (deoxyribonucleic acid) and other physical evidence corroborated the victim's story in *Emery*. *Anderson*, 153 Wn. App. at 432 n.8 ("the untainted evidence against Anderson was overwhelming"); *Emery*, 161 Wn. App. at 195-96. In light of such evidence, we could not conclude that the prosecutor's closing remarks caused prejudice, especially under the heightened standard following a failure to object. *Anderson*, 153 Wn. App. at 432; *Emery*, 161 Wn. App. at 195-96. In contrast, the *Venegas* and *Johnson* convictions turned largely on witness credibility. In *Venegas*, 155 Wn. App. at 527, we held that the prosecutor's conduct was flagrant

and ultimately reversed because of cumulative errors. And in *Johnson,* where the jury was presented with conflicting evidence, we could not conclude that the prosecutor's comments did not affect the jury's verdict. *Johnson,* 158 Wn. App. at 686.

¶32 The case against Reedy and Evans was not so strong that we can hold the prosecutor's comments harmless. The victim did not testify and refused to tell the police what, if anything, had been taken from him and how he was injured. The State also had serious credibility problems with the only witnesses who could testify as to what happened inside the motel room. Neither eyewitness identified the defendants in court. Erickson admitted smoking "meth" on the day in question, and she did not remember identifying any of the suspects. RP at 20, 24. Her testimony also differs slightly from the other eyewitness, Sawyer-Jones, who testified that there was no marijuana in the room even though some was found during the subsequent search. And although Sawyer-Jones testified that she was not there to use "meth," the officer who interviewed her testified that she admitted being at the motel to use methamphetamine. RP at 49, 117. Erickson and Sawyer-Jones also had inconsistent testimony with respect to the number of men in the motel room. Yet the jury had to rely on their testimony to find that Evans assaulted Patterson and voiced his intent to rob him. The jury also had to infer that Reedy took methamphetamine from the room, that the methamphetamine belonged to Patterson, and that Reedy knowingly participated in the robbery. Similar to *Venegas* and *Johnson,* the evidence is not so compelling that we can say the jury would have reached the same verdict absent the improper arguments.

¶33 Moreover, we have never hesitated to reverse where several errors combined to deny the defendant a fair trial. *See State v. Hodges,* 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). In *Venegas,* 155 Wn. App. at 525, we found flagrant misconduct where the prosecutor *repeatedly* at-

tacked Venegas's presumption of innocence with improper argument. Here, too, we are unwilling to speculate that a curative instruction could have overcome the prosecutor's multipronged and persistent attack on the presumption of innocence, the State's burden of proof, and the jury's role. Under these circumstances, we conclude that the prosecutor's comments could not have been cured by the instructions; thus, we reverse even though defense counsel failed to object.[3] *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008) (court would not hesitate to reverse for prosecutor's misstatements of reasonable doubt standard if the trial court had not intervened to correct the mischaracterizations), *cert. denied, Warren v. Washington*, 129 S. Ct. 2007 (2009); *see Venegas*, 155 Wn. App. at 527.

¶34 Reversed and remanded.

Van Deren and Johanson, JJ., concur.

---

[3] The defendants also challenge the sufficiency of the evidence to prove their robbery convictions. Considering the evidence together with all reasonable inferences in favor of the State, we find the evidence sufficient to support the robbery convictions. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (in considering a challenge to the sufficiency of the evidence, an appellate court construes the evidence in the light most favorable to the State and asks whether any rational trier of fact would have found guilt beyond a reasonable doubt).