FILED
COURT OF APPEALS
DIVISION II

2013 APR 23 PM 12: 00

STATE OF WASHINGTON

BY _____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 39860-5-II |
| Respondent, | |
| v. | |
| JOJO HAMILTON EVANS, SR., | Consolidated with: |
| Appellant. | |
| STATE OF WASHINGTON, | No. 39943-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JARRETT LYNN REEDY, | AFTER REMAND |
| | FROM SUPREME COURT |
| Appellant. | |

JOHANSON, A.C.J.* — Our Supreme Court granted a petition for review in *State v. Evans*, 163 Wn. App. 635, 260 P.3d 934 (2011), and remanded for our reconsideration in light of *State v. Emery*, 174 Wn.2d 741, 278 P.3d 653 (2012). We affirm our earlier decision, which reversed JoJo Hamilton Evans Jr.'s and Jarrett Lynn Reedy's numerous convictions because of the cumulative effect of prosecutorial misconduct.

---

* Acting Chief Judge Jill Johanson is substituted as author of this opinion for retired Judge David Armstrong. Judge Thomas Bjorgen, Judge Armstrong's successor, joins as a panel member for this case.

In November 2008, Shalamar Erickson and Amber Sawyer-Jones went to a Lakewood motel to buy and smoke methamphetamine from a friend, Travis Patterson.[1] *Evans*, 163 Wn. App. at 638. They entered Patterson's room and may or may not have smoked methamphetamine with Patterson or his other associates. *Evans*, 163 Wn. App. at 638. Apparently, Evans and Reedy were also in Patterson's motel room because an undercover officer stationed outside claimed to see Evans leave the motel room on two occasions. *Evans*, 163 Wn. App. at 639. That same officer saw Evans return to the motel room, where Reedy let him inside. *Evans*, 163 Wn. App. at 639.

Before Erickson and Sawyer-Jones left the motel room, a man entered and hit Patterson and another man over the head with a handgun and told everyone that they were "getting jacked." *Evans*, 163 Wn. App. at 639. Erickson, Sawyer-Jones, and then another man fled the motel room, with Reedy and Evans fleeing just behind them. *Evans*, 163 Wn. App. at 639. Officers apprehended both Reedy and Evans and recovered handguns in the areas where the two were arrested. *Evans*, 163 Wn. App. at 639-40.

The State theorized that Evans and Reedy planned to "jack" Patterson and his associates. 3 Verbatim Report of Proceedings (VRP) at 345. The State argued that Reedy was in Patterson's motel room; then, Evans came up to the room, and Reedy let him inside. The State asserted that Evans told the people in Patterson's room that they were all being jacked, and he then hit Patterson over the head with his pistol before fleeing; Reedy collected some of the drugs from the motel room before he fled.

---

[1] For a complete summary of the facts, see *Evans*, 163 Wn. App. at 638-42.

The State charged Evans with first degree burglary, first degree robbery, second degree assault, unlawful possession of a controlled substance with intent to deliver, possession of a stolen firearm, and unlawful firearm possession. *Evans*, 163 Wn. App. at 640. The State charged Reedy with first degree burglary, first degree robbery, unlawful possession of a controlled substance with intent to deliver, and first degree unlawful firearm possession. *Evans*, 163 Wn. App. at 640-41.

During closing argument at trial, the State engaged in three types of misconduct that we held deprived Evans and Reedy of a fair trial. Without objection, the State (1) misstated the defendants' presumption of innocence by stating that the presumption of innocence "'kind of stops once you start deliberating'"; (2) used declare-the-truth arguments in tasking the jury with "get[ting] to the truth" and deciding "what happened" in the motel room; and (3) using the fill-in-the-blank argument to shift the burden of proof to the defendants. *Evans*, 163 Wn. App. at 643, 644-45 (quoting 3 VRP at 340). The jury convicted Evans of first degree robbery, second degree assault, second degree unlawful firearm possession, and unlawful possession of a controlled substance; it also added sentencing enhancements to the robbery and assault convictions. *Evans*, 163 Wn. App. at 642. It convicted Reedy of first degree robbery, unlawful possession of a controlled substance, and unlawful firearm possession, and also included firearm enhancements. *Evans*, 163 Wn. App. at 642. We reversed, holding that the cumulative effect of these episodes of misconduct deprived the defendants of a fair trial. *Evans*, 163 Wn. App. at 647-48.

*Emery* too involved prosecutorial misconduct. In *Emery*, the State employed similar fill-in-the-blank and declare-the-truth arguments. 174 Wn.2d at 750-51. Although our Supreme

3

Court held that these two arguments were improper, it determined that these improper arguments did not warrant a new trial because defense counsel did not object at trial, and Emery could not show that the arguments were so prejudicial that the trial court could not have cured the prejudicial effect with an instruction. *Emery*, 174 Wn.2d at 764. The Supreme Court stated, "Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762.

First, the Supreme Court analyzed whether the State's fill-in-the-blank and declare-the-truth arguments were flagrant and ill intentioned.[2] It concluded that declare-the-truth and fill-in-the-blank arguments are not the type of arguments that our courts have traditionally found inflammatory—like arguments appealing to racial biases or local prejudices—so these arguments lacked any possibility of inflammatory effect. *Emery*, 174 Wn.2d at 763. As a result, it held that the fill-in-the-blank and declare-the-truth arguments used in Emery's trial were neither flagrant nor ill intentioned.

Second, the Supreme Court evaluated whether an instruction could have cured the State's improper comments. Again, the court placed great emphasis on this analysis, and it reviewed the facts in *Emery* against those of *State v. Warren*, 165 Wn.2d 17, 195 P.3d 940 (2008), *cert. denied*, 129 S. Ct. 2007 (2009).

---

[2] The Supreme Court noted that Emery's trial occurred before our courts issued the most recent flurry of prosecutorial misconduct cases, *State v. Anderson*, 153 Wn. App. 417, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010); *State v. Venegas*, 155 Wn. App. 507, 228 P.3d 813, *review denied*, 170 Wn.2d 1003 (2010).

In *Warren*, the State undermined the presumption of innocence by saying, "Reasonable doubt does not mean give the defendant the benefit of the doubt, and that is clear when you read the definition." 165 Wn.2d at 24. The State also said that the "entire trial has been a search for the truth." *Warren*, 165 Wn.2d at 25. In *Warren*, however, the defense objected to these misstatements, and the trial court offered a curative instruction that the *Emery* opinion described as "imperfect." 174 Wn.2d at 764. Nevertheless, our Supreme Court held that the instruction cured the State's improper remarks so a new trial was not warranted.

Our Supreme Court relied on *Warren* in *Emery*, explaining, "Because the very similar misstatements in *Warren* were cured by an improper instruction, the misstatements here could have been cured by a proper instruction." *Emery*, 174 Wn.2d at 764. It reasoned that, had Emery objected at trial, the trial court would have properly explained the jury's role and reiterated the correct burden of proof. An instruction would have eliminated confusion and cured any potential prejudice stemming from the State's improper remarks. *Emery*, 174 Wn.2d at 764.

In a footnote, the Supreme Court added that, even had Emery shown that the statements were incurable, he could not show a substantial likelihood that the statements affected the jury's verdict. It reasoned that the State "clearly and repeatedly stated that the State bears the burden of proof and quoted the law directly from the jury instructions." *Emery*, 174 Wn.2d at 764 n.14. It also concluded that Emery could not demonstrate that the statements affected the jury's verdict because the State's case was "very strong, probably overwhelming" and lacked conflicting testimony. *Emery*, 174 Wn.2d at 764 n.14. Lastly, the Supreme Court noted that the jury

instructions properly defined reasonable doubt for the jury and directed the jurors to disregard arguments not supported by the instructions. *Emery*, 174 Wn.2d at 765 n.14.

*Evans* is similar to *Emery* in many ways. Like *Emery*, the *Evans* trial occurred before our court's recent opinions involving prosecutorial misconduct. And like *Emery*, *Evans* involved the State's use of fill-in-the-blank and declare-the-truth arguments. Also, as in *Emery*, neither Evans nor Reedy objected to the improper arguments.

But *Evans* and *Emery* are also factually very different. In addition to the fill-in-the-blank and declare-the-truth misconduct that occurred in *Emery*, in *Evans* the State also improperly advised the jury regarding the defendants' presumptive innocence. Specifically, the State argued that the defendants' presumptive innocence "kind of stops once you start deliberating right? At that point, you start to evaluate evidence and decide if that has been overcome or not." *Evans*, 163 Wn. App. at 641. As we noted in our initial opinion, mischaracterizing the defendant's presumptive innocence undermines the "'bedrock upon which the criminal justice system stands.'" *Evans*, 163 Wn. App. at 643 (quoting *State v. Bennett*, 161 Wn.2d 303, 315, 165 P.3d 1241 (2007)).

*Emery* tells us to "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762. In *Evans*, we held that the State offered improper statements during closing arguments, developing themes that diluted the State's role in satisfying the burden of proof, erroneously invited jurors to disregard weaknesses in the State's case, and improperly shifted the State's burden of proof. *Evans*, 163 Wn. App. at 643-44, 645, 646. We analyzed this misconduct, evaluating the potential effect of a curative instruction, and even after considering

the potential efficacy of an instruction, we held that the improper arguments resulted in a prejudice that could not have been remedied by a curative instruction. *Evans*, 163 Wn. App. at 648.

In *Emery*, the Supreme Court cited *Warren*, and recited two improper remarks that the trial court cured with an instruction. *Evans* involved more than just two improper statements— here the State's closing argument repeatedly made improper comments involving three separate misconduct themes relating to the jury's responsibility and role in trial proceedings, as well as the State's burden of proof. *Emery* directs us to focus our analysis on whether the State's misconduct and resulting prejudice could have been cured. In our initial *Evans* opinion, we analyzed the curability of any resulting prejudice, and we held that a curative instruction could not "overcome the prosecutor's multipronged and persistent attack on the presumption of innocence, the State's burden of proof, and the jury's role." 163 Wn. App. at 648. Our opinion does not change, even in light of *Emery*. Given the severity of the misconduct during closing argument, and its focus on minimizing the State's task in satisfying its burden of proof, and the jury's role in evaluating the evidence presented at trial, we maintain that the trial court could not have cured the misconduct through instruction.

Moreover, in distinguishing *Emery* from *Evans* to determine the potential for prejudice,

we note that unlike *Emery*, with its overwhelming evidence favoring the State, *Evans* involved numerous conflicting factual issues,[3] exacerbating the potential for prejudicial effect on the jury. Partly due to this conflicting evidence, we held that the State's improper statements would be so prejudicial as to not be curable by an instruction. In sum, the State's improper arguments were so prejudicial that a curative instruction would not have remedied the misconduct. Therefore, even in light of *Emery*, we affirm our earlier *Evans* decision. The cumulative error from the numerous instances of misconduct warrants a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Van Deren, J.

Bjorgen, J.

---

[3] The victim, Patterson, refused to testify, offering no explanation whether anything had been taken from him, or how he was injured. *Evans*, 163 Wn. App. at 647. No eyewitnesses identified the defendants in court; and, Erickson admitted smoking methamphetamine and being high on the day of the incident, compromising her credibility. *Evans*, 163 Wn. App. at 647. Moreover, conflicting testimony creates additional questions regarding how many men were in the motel room; who in the motel owned methamphetamine, and who participated in robbing the methamphetamine's owner. *Evans*, 163 Wn. App. at 647.