# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) ) | |
| | ) | No. 73930-1-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BRANDON K. DAHL, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 9, 2015 |
| | ) | |

DWYER, J. — Brandon Dahl appeals from the judgment entered on the jury's verdicts finding him guilty of theft of a motor vehicle and obstructing a law enforcement officer. Dahl claims that several statements made by the prosecutor during closing argument constituted misconduct. He also claims that his counsel provided ineffective assistance by "fail[ing] to properly object to the prosecutor's closing argument." Finally, he claims, and the State concedes, that the trial court erred in imposing a community custody condition that prohibited him from "frequent[ing] places whose primary business is the sale of liquor." We affirm his convictions but remand to the trial court for revision of the judgment and sentence.

I

On June 6, 2014, the State charged Brandon Dahl with one count of theft of a motor vehicle. Prior to trial, the State was allowed to amend the information

to add a charge of obstructing a law enforcement officer. Dahl pleaded not guilty to both charges. The evidence presented at trial is summarized as follows.

On June 4, 2014, James Sittler drove a Ford Escape owned by his fiancée, Rachel Bachtell, to Allison Clark's house. Sittler recalled that he "put my keys on [a] rack when I had arrived at the house."

Sittler was in the downstairs portion of the house with Clark when Dahl "just kind of showed up" at the sliding glass door. Sittler observed that Clark had "a bewildered look on her face" at Dahl's arrival. Sittler heard Clark engage in conversation with Dahl and grant his request to use the bathroom inside her house.

Clark went upstairs as Dahl came inside to use the bathroom. When Dahl emerged from the bathroom, Sittler was sitting on the couch. Soon thereafter, as Sittler got up to use the bathroom, Sittler noticed that Dahl was "messing with the keys on the rack." When Sittler came out of the bathroom, he observed that Dahl was gone. Several minutes later, Sittler went outside to get something from the Escape and noticed that it was also gone. After Sittler told Clark what had happened, the two got into Clark's vehicle and drove around in an attempt to locate the Escape. Sittler also called 911 to report the theft. Clark then drove Sittler to Bachtell's house, where he was residing at the time.

Soon thereafter, Sittler spoke with Mason County Deputy Sheriff Patrick Lopez, who arrived at Bachtell's house in response to the theft report. While driving to Bachtell's house, Lopez had been notified by dispatch that the stolen vehicle had been located and that other units were attempting to pull it over.

-2-

Lopez took written statements from Bachtell and Sittler. After asking Bachtell if she had a spare key to the Escape, to which she responded in the affirmative, he transported her to the location of her vehicle.

Dahl was with Bachtell's vehicle when Lopez arrived. Lopez asked Dahl if he knew who owned the vehicle and if he had permission to use it. Dahl responded that he did not know who owned the vehicle but that Clark had given him permission to use it.[1]

Sheriff's Corporal Timothy Ripp testified that, on June 4, he was on patrol duty "looking for a reported stolen vehicle." Ripp recalled that he "was advising other units that I had observed the vehicle " but that when he tried to "get behind [the vehicle]," it "accelerated in speed." He eventually "lost the vehicle." Later, at the site where the vehicle was located, Ripp spoke with Dahl. When asked where he went after spotting Ripp's patrol vehicle, "[Dahl] said he had pulled down a driveway . . . to hide from me."

At trial, when asked whether he was performing his official duties at the time of the pursuit, and whether Dahl's actions hindered his ability to exercise those duties, Ripp testified "yes" as to both questions.

Deputy Michelle Williams testified that, at the beginning of her shift on June 4, a call came in regarding a stolen vehicle. When she arrived at the site

---

[1] Dahl testified that, while at Clark's house, he asked her if he could borrow a vehicle, and that "[s]he said—she said yes. But that's – she wanted to wait until her mom got home so there was two vehicles, so she had another vehicle." Dahl asserted that he then "grabbed the keys off the latch . . . I seen [sic] that it was a Ford key" and told Clark that he "wasn't going to be gone long." Dahl then drove off in the Ford.

At trial, Clark denied giving Dahl permission to use any vehicle. In addition, Bachtell testified that her son's father, Sittler, had permission to use the vehicle but that Dahl did not.

where the vehicle was located, she observed that the vehicle was "positioned in the rear of [a] driveway closest to the street." She testified that "I checked to make sure that there was [sic] no persons inside the vehicle. I then placed my hand on the hood of the vehicle and it felt warm to the touch." She then knocked on the door of a nearby home and asked the residents if Dahl was there. After some encouragement from a male resident, Dahl appeared and she took him into custody.

Williams also had an opportunity to question Dahl. Williams testified that when she asked Dahl what he was doing with the vehicle, Dahl told her that he had borrowed it from Clark. Williams then asked Dahl if the vehicle belonged to Clark, if it was Clark's vehicle to lend, where he was going, and if he was going to return the car. To each of these questions, Dahl's response to Williams was "I don't know." When Williams further questioned Dahl regarding why he had been hiding, he told her that he "didn't want to get into trouble."[2]

A jury found Dahl guilty of both charges. He was sentenced to a term of confinement and probation. The terms of his probation included a community custody condition requiring that he "not go into bars, taverns, lounges, or other places whose primary business is the sale of liquor."

Dahl appeals.

---

[2] At trial, Dahl denied stating that he did not know when he was going to take the car back, that he was trying to avoid an officer, and that he was hiding from police because he did not want to get into trouble.

II

Dahl first contends that several statements made by the prosecutor during closing argument constituted prosecutorial misconduct requiring reversal. We disagree.

"A defendant claiming prosecutorial misconduct must show that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and circumstances at trial." State v. Miles, 139 Wn. App. 879, 885, 162 P.3d 1169 (2007). We review the propriety of a prosecutor's conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given. State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994). In closing argument, a prosecutor is afforded wide latitude in drawing and expressing reasonable inferences from the evidence. State v. Hoffman, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991). Improper comments are prejudicial only where "'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'" State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (alteration in original) (quoting State v. Pirtle, 127 Wn.2d 628, 672, 904 P.2d 245 (1995)).

Moreover, "'[c]ounsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse, use the claimed misconduct as a life preserver on a motion for new trial or on appeal.'" Russell, 125 Wn.2d at 93 (quoting Jones v. Hogan, 56 Wn.2d 23, 27, 351 P.2d 153 (1960)). Consequently, where a defendant does not object and request a curative instruction at trial, reversal is unwarranted unless we determine that the objectionable remark "'is so

-5-

flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury.'" State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)).

Dahl's appellate claim involves three instances of alleged misconduct. At trial, he interposed an objection to only one of the claimed wrongful acts.

A

Dahl asserts that the prosecutor engaged in misconduct at the beginning of his closing argument by improperly stating that it was the duty of the jury to "figure out what's true and not true." Dahl's trial counsel did not object to this statement. Thus, on appeal, Dahl bears the burden of demonstrating both that the statement was improper and that it was so flagrant and ill-intentioned that any resulting prejudice could not have been neutralized by a curative instruction.

"[A] jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt." State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). "Urging the jury to render a just verdict that is supported by evidence is not misconduct." State v. Curtiss, 161 Wn. App. 673, 701, 250 P.3d 496 (2011); accord State v. Fuller, 169 Wn. App. 797, 822, 282 P.3d 126 (2012), review denied, 176 Wn.2d 1006 (2013).

However, "[t]elling the jury that its job is to "speak the truth," or some variation thereof, misstates the burden of proof and is improper." State v. Lindsay, 180 Wn.2d 423, 437, 326 P.3d 125 (2014); Emery, 174 Wn.2d at 760-65 (improper but not prejudicial for a prosecutor to make statements about truth

-6-

that mischaracterized the role of the jury); State v. Evans, 163 Wn. App. 635, 644-46, 260 P.3d 934 (2011) (the prosecutor's statement that the jury "get to the truth" improperly "suggested to the jury that it had an obligation to determine the truth," but was not prejudicial); State v. Anderson, 153 Wn. App. 417, 429, 220 P.3d 1273 (2009) ("The prosecutor's repeated requests that the jury 'declare the truth,'. . . were improper," but not prejudicial.).

The prosecutor's challenged remarks were as follows:

> You've had a chance to sit here and listen to all the testimony in this case. You've heard testimony from several different–different witnesses, including the defendant. Now as a juror, you took a duty or you took an oath to do your duty as a juror. And that duty means to listen to the witnesses, *figure out what's true and what's not true*, listen to the law that the Judge just gave you, take it back to the jury room, review it again if you want to, and then decide this case based upon the law that she gave you and the facts that were presented to you alone.

(Emphasis added.)

When the prosecutor's remarks are viewed in the context of the entire argument and in light of the instructions given it is apparent that the prosecutor's use of the word "true" did not mischaracterize the role of the jury. In urging the jury to "figure out what's true and what's not true" the prosecutor was appropriately asking that the jury return a just verdict after weighing all of the evidence and making credibility determinations. The statements surrounding the prosecutor's reference to truth support the propriety of the statement. The prosecutor encouraged the jury to recall the testimony of the witnesses, apply the law, and "decide this case based upon the law that [the judge] gave you and the facts that were presented to you alone." This argument aligns with the court's

-7-

instruction that the jurors "are the sole judges of the value or weight to be given to the testimony of each witness." Considered in context, the prosecutor's use of the word "true" was an effort to reference the jury's role as fact finders, evaluators of the evidence, and assessors of the credibility of witnesses. The prosecutor did not attempt to improperly shift the burden of proof. Rather, the prosecutor reminded the jury that its verdicts needed to be based on the evidence. The challenged statement was proper.

Moreover, even had the prosecutor's challenged remarks been improper, a curative instruction could have remedied any prejudice.

Dahl does not establish an entitlement to appellate relief.

B

Dahl next asserts that the prosecutor committed misconduct by vouching for the credibility of law enforcement witnesses during the State's rebuttal closing argument. Dahl's trial counsel did not object to these remarks.

"It is improper for a prosecutor personally to vouch for the credibility of a witness." State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). "Vouching may occur in two ways: the prosecution may place the prestige of the government behind the witness or may indicate that information not presented to the jury supports the witness's testimony." State v. Robinson, No. 71927-7-I, 2015 WL 5098707, at *7 (Wash. Ct. App. Aug. 31, 2015).

Nevertheless, "[d]uring closing arguments, a prosecutor may argue points of law that are included within the court's jury instructions and he may comment on a witness's veracity. A prosecutor may not, however, directly or indirectly

state a personal belief that a witness was telling the truth." State v. Sandoval, 137 Wn. App. 532, 540, 154 P.3d 271 (2007) (citations omitted). "Prejudicial error will not be found unless it is "'clear and unmistakable'" that counsel is expressing a personal opinion." State v. Allen, 161 Wn. App. 727, 746, 255 P.3d 784 (2011) (citing Brett, 126 Wn.2d at 175) (quoting State v. Sargent, 40 Wn. App. 340, 344, 698 P.2d 598 (1985)).

The prosecutor's challenged remarks were as follows:

> It's interesting that [Dahl] tells you essentially that the cops are lying. [Dahl] never said that. Well you heard the cops. They testified. They said — they testified to things [Dahl] said. They testified that — Deputy Lopez, do you know who the owner of the car is? No. Deputy Williams, where were you going? Don't know. When were you going to return the vehicle? Don't know. Why were you hiding? Didn't want to get in trouble. Trouble for what? I don't know. To Corporal Ripp, I pulled off to hide from you.
>
> [Dahl] denied that he said these things to the officers. What motive can you possibly imagine the officers making these up? There is no — there is no reason for them to do that. Absolutely not one shred of reason anywhere for them to make this up. What motive does [Dahl] have? Well, we can figure that out.

In uttering these words, the prosecutor did not improperly vouch for the State's witnesses.[3] Instead, in making these remarks, the prosecutor properly focused on recounting the testimony offered by the various law enforcement witnesses and by Dahl.

---

[3] In fact, the record indicates that defense counsel argued against the credibility of law enforcement witnesses during the defense closing argument:

> We talked a little bit in voir dire, and actually during the course of this case, about police officers and how much they testify in court, and how much more credible they probably are going to appear because they testify all the time. They're practiced. They know things like to look at the jury. They know how to answer the question that the prosecutor puts to them. They know how to avoid difficulties on cross examination, that sort of thing.

Further, the prosecutor's statement that there was "[a]bsolutely not one shred of reason anywhere for [the officers] to make this up," was properly directed at the defense's challenge to the veracity of the officers' testimony. The prosecutor argued that no evidence presented at trial indicated that the officers had a motive to lie but that Dahl did. This was not improper.

Moreover, the record is devoid of any indication that the prosecutor vouched for his witnesses by relying on "information not presented to the jury." Robinson, 2015 WL 5098707, at *7. Rather, the prosecutor's argument concerning the officers' lack of motive to lie was appropriately grounded in the evidence presented at trial.

Finally, even had the prosecutor's statements been improper, a proper curative instruction could have remedied any prejudice.

Again, Dahl does not establish an entitlement to appellate relief.

C

Dahl next asserts that a third act of misconduct occurred during the State's rebuttal argument, claiming that the prosecutor disparaged defense counsel. Dahl's counsel objected to these remarks at trial. The objection was overruled. Thus, on appeal, Dahl bears the burden of demonstrating both that the statement was improper and that there is a substantial likelihood that the comment prejudiced the jury's verdict. Magers, 164 Wn.2d at 191.

"As an advocate, the prosecuting attorney is entitled to make a fair response to the arguments of defense counsel." Brown, 132 Wn.2d at 566 (citing Russell, 125 Wn.2d at 87). In this regard, "[i]t is not misconduct for a prosecutor

-10-

to argue that the evidence does not support the defense theory." State v. Graham, 59 Wn. App. 418, 429, 798 P.2d 314 (1990).

However, "[i]t is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity." State v. Thorgerson, 172 Wn.2d 438, 451, 258 P.3d 43 (2011); State v. Warren, 165 Wn.2d 17, 29-30, 195 P.3d 940 (2008) (improper but not prejudicial for prosecutor to argue that all defense attorneys mischaracterize evidence and twist the facts); State v. Gonzales, 111 Wn. App. 276, 283-84, 45 P.3d 205 (2002) (improper and prejudicial for prosecutor to remark that, unlike defense lawyers, prosecutors take an oath to "see that justice is served"); State v. Negrete, 72 Wn. App. 62, 66-67, 863 P.2d 137 (1993) (improper but not prejudicial for prosecutor to argue that defense counsel is being paid to twist the words of a witness).

The record herein indicates that during closing argument defense counsel argued to the jury:

> None of us really know what the dynamic is between all of these people. But it's clear enough that there's something going on. When one person characterizes another as a fiancée, and the other person characterizes one as a baby's daddy.

In rebuttal, the prosecutor argued:

> You know, making comments like the credibility of the – the witnesses and saying that one says fiancée and one says baby daddy, frankly, that's kind of offensive. As jurors, you saw what was going on. Obviously Ms. Bachtell—
>
> [Defense Counsel]: Your Honor, I'm going to object to the characterization.

THE COURT: Overruled.[4]

Viewed in context, the prosecutor's statement—that Dahl's counsel's characterization of the testimony was "offensive"—did not improperly impugn opposing counsel. The prosecutor's argument, made in response to defense counsel's characterization of a witness as a "baby daddy," was a proper attempt to emphasize to the jury that the argument advanced by the defense attorney did not constitute an unbiased review of the factual record. Indeed, the prosecution attacked the *argument* of defense counsel, not defense counsel himself. The trial judge properly overruled the objection.[5]

## III

Dahl next contends that his counsel provided constitutionally ineffective assistance in failing to object to the two instances of alleged prosecutorial misconduct discussed above. Because we have determined that the comments were proper, this claim obviously fails.

## IV

Finally, Dahl contends that "the trial court erred in imposing a community custody condition prohibiting [him] from frequenting places whose primary business is the sale of liquor." The State concedes that the trial court erred by imposing this condition and that the case must be remanded for deletion of this requirement.

---

[4] The record indicates that, contrary to Dahl's trial counsel's characterization, Bachtell never referred to Sittler as her "baby's daddy." Her specific testimony, when asked about Sittler's relationship to her, was that "[w]e have a son together."

[5] Because we determine that the instances of alleged prosecutorial misconduct were, in fact, proper argument, Dahl's contention that the remarks constituted cumulative error obviously fails.

We affirm Dahl's convictions. We remand the cause to the trial court to revise the judgment and sentence in accordance with this opinion.[6]

Affirmed in part, reversed in part, and remanded.

We concur:

---

[6] While this appeal was pending counsel informed us that Dahl died. As a result, the State moved to dismiss the appeal. That motion is denied.

Dahl's parents moved to intervene as a party. That motion is referred to the trial court on remand.