# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 73963-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MANUEL URRIETA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: December 7, 2015 |

SPEARMAN, C.J. — Manuel Urrieta appeals his conviction for unlawful possession of a firearm. He argues that prosecutorial misconduct violated his right to a fair trial. He also argues that the trial court erred by denying his motion to recall a witness, and considering inadmissible evidence. Finally, he argues that he received ineffective assistance of counsel.[1] Finding no error, we affirm.

## FACTS

Urrieta was driving with three passengers when his car repeatedly drifted out of its lane. A City of Orting police officer, Daniel Drasher, observed the car and made a traffic stop. The car smelled of alcohol and Urrieta showed signs of intoxication. Urrieta admitted that he had been drinking and that he was driving with a suspended license.

---

[1] Urrieta also argues that the trial court violated his right to a public trial and the public's right to open proceedings by conducting peremptory challenges on paper during voir dire. But since the filing of the briefs in this matter our Supreme Court has rejected that argument. State v. Love, 183 Wn.2d 598, 354 P.3d 841 (2015).

Officer Drasher arrested Urrieta for driving under the influence of alcohol (DUI). Urrieta refused to take a breath alcohol test.

Meanwhile, a second officer, Officer Hurley, informed Urrieta's passengers that the car was going to be towed and they needed to leave. Only one of the passengers, Aaron Letho, was identified on the dispatch record. After the passengers left the scene, Officer Hurley conducted an inventory search. He found a semiautomatic handgun and a magazine under the driver's seat. The State charged Urrieta with DUI, driving with a suspended license, and unlawful possession of a firearm. Urrieta pleaded guilty to the driving offenses.

At trial on the firearm charge, Officers Drasher and Hurley testified to the events surrounding Urrieta's arrest. During the recess after the State's case, Urrieta telephoned his cousin, Francisco Santiago. Urrieta told his attorney that Santiago would testify and would be there in twenty minutes. The court extended the recess to allow Santiago to arrive.

Santiago testified that he was the front seat passenger on the night Urrieta was arrested. He stated that the back seat passengers were his friends Jake Boyd and Aaron Letho. Santiago testified that he saw Jake Boyd pull a gun out of his pocket and put it under the driver's seat. He stated that he had been in frequent contact with Urrieta but had not told him about Jake Boyd. Santiago's cross examination included the following exchanges:

> Q: You didn't tell anybody about Jake Boyd, did you? You didn't even tell your cousin, did you?
> A: Nobody.

2

Q: You told nobody. So after the State puts on its case you show up with this exculpatory evidence saying that you saw someone put the gun under the seat, correct?

A: Yes.

...

1Verbatim Report of Proceedings (VRP) at 101. [2]

Q: And you never said anything. Is that what you want us to believe, that you knew this the whole time and you wait until after I rested and my officers leave and then you come here?

A: Yeah.

Q: My officers leave and now you have it. You said that you were scared. That's what you said. You gave the jury two explanations, right? First you said that you were scared, right?

A: I was scared.

Q: You were scared. But you just told the jurors that Jake, Jake Boyd, and what's the other guy's name?

A: Aaron.

Q: We have never talked about this, right?

A: Right.

Q: We never – I'm learning this right now. So you, Jake Boyd and Aaron, you said this, they are your friends. . . . So what are you scared of?

. . . .

A: I just didn't want to be involved in nothing.

...

Q: Because you weren't communicating this information to the attorneys. You were talking to your cousin, weren't you?

A: And his attorney.

Q: You didn't talk to him until today about this Jacob fellow; isn't that true?

A: I talked to him over the weekend.

Q: Did you talk to the attorney about Jacob?

A: No.

Q: You brought that up today after the officers left, correct?

A: Yes.

Q: So he [the defense attorney] didn't know about it. In fact, defense counsel didn't even know that you had been talking on the phone together, did he?

A: No.

Q: No. And you expect to come in here after all that's been said and done and just tell the jurors whatever you want?

---

[2] There are two volumes of verbatim report of proceedings referenced as follows: 1VRP – Volume One, May 15, 19, 20, 30, 2014; 2VRP – jury voir dire and opening statements, May 15, 19, 2014.

> [Defense counsel]: I'm going to object at this point. It's argumentative.
> The Court: Sustained. Rephrase...

1VRP at 102-105. (Emphasis added).

Urrieta testified in his own defense. He stated that he did not know the gun was in the car. He also admitted that he was a convicted felon, he had been driving with a suspended license, he had been drinking, and he had been charged with DUI. In response to a question during cross examination, Urrieta stated that he had refused to take an alcohol breath test. He acknowledged that he was prohibited from having contact with witnesses, but testified that he did not think the prohibition applied to Santiago because he was not named on the no-contact form. Urrieta stated that he and Santiago had not discussed the night of the arrest. He later stated that he and Santiago had been talking about the night of the arrest since the previous Friday, but that Santiago had not told him about Jake Boyd. Urrieta then stated that Santiago told him about Jake Boyd on Sunday, the day before trial. The prosecutor suggested that Urrieta and Santiago made up the name "Jacob." 1VRP at 121.

Urrieta moved to recall Officer Drasher to establish that Aaron Letho was the name of the only passenger identified in the police dispatch record. The court found that the evidence was offered to rehabilitate Santiago by proof of a collateral matter and denied the motion.

In closing, the prosecutor's argument included the following:

> I'm going to point out a mistake that Mr. Santiago made, one of many he made on the stand. He [Officer Hurley] found a gun, but he also found something else. ...[Y]ou remember he says there was a magazine and it had ammunition in it, and it was touching the firearm. . . .

4

1VRP at 138-139

...

The Defendant is the one who called [Santiago] and told him to come here. . . . He called him after the State rested. He admitted that on the stand. I called him, and in the hallway he told his attorney, he will be here in 20 minutes. 20 minutes, and that's what we were waiting for.

He came here and he had a story. What was his story? And I know I was hard on him. I know that I was probably overly passionate, but I had to get to it because this was new information. You don't get to do this, and you know what? They truly underestimate you. They underestimate you. They think that they can come in here and change the game, change the analysis, attack that knowing [element] because that's the only issue, right? Knowing. He didn't know.

...

The instructions tell[] you that you are the judge of credibility, and you get to look at the reasonableness of the testimony. Is it reasonable for someone you love, let's put yourself in the place of Mr. Santiago, your cousin who you love. . . .

...

Mr. Santiago would tell you he saw someone put the gun there, and he kept it a secret from his cousin that he had been hanging out with every single day. He even knew that his cousin was in custody for over two months. He didn't say anything. His cousin was in jail for two months and he isn't going to say anything? Really? They underestimate you.

...

Let's talk about the Defendant's testimony. He didn't have to testify, but he chose to. And I went after him because I wanted the truth. And what did he tell you? He said—first he said a couple of different things, he said I didn't talk to my cousin about the case. He says I didn't know about this. I didn't know what he was going to say.

...

And then when I kept questioning him, and I was going after him, I said, why did you want your cousin here if you don't know what he was going to say?. . . And he said, well, I spoke to him on Sunday. . . .

If he spoke to him on Sunday, that means his cousin lied when he said he didn't speak to him at all. They can't do this to you. They underestimate you. They are trying to go after the one prong they think they have room to, and that's knowledge.

Put it on someone else. We will make up a name, Jacob. We will make this guy up. It's too late for the State to do anything. They can't go out and conduct their investigation. They already rested their case.

1VRP at 147-151. (Emphasis added).

## DISCUSSION

Urrieta claims that the trial was marred by pervasive prosecutorial misconduct that denied him a fair trial. He contends that the prosecutor erred by (1) encouraging the jury to find Urrieta guilty on improper grounds; (2) offering personal opinions on witness credibility and guilt; and (3) making emotional appeals to the jury that undermined the presumption of innocence.

To prevail on a claim of prosecutorial misconduct, the defendant must establish that the prosecutor's conduct was "'both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). But because Urrieta did not object to the alleged misconduct below, the issue of prosecutorial misconduct is waived unless the misconduct was flagrant, ill-intentioned, and so prejudicial that it could not have been cured by an admonition to the jury. State v. Weber, 159 Wn.2d 252, 270, 149 P.3d 646 (2006) (citing State v. Stenson, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997)).

First, Urrieta challenges the prosecutor's comments drawing attention to the fact that Santiago did not come forward with his evidence until after the State rested its case. Urrieta argues that these comments encouraged the jury to penalize Urrieta for the late disclosure of Santiago's evidence, thus urging the jury to convict on improper grounds. We disagree. Although not well stated, when viewed in context, the prosecutor's comments merely urged the jury to consider the timing of Santiago's disclosure in assessing his credibility. Moreover, because the argument was neither flagrant nor ill intentioned, there was no error.

Urrieta next argues that the prosecutor offered improper personal opinions on witness credibility and guilt. It is improper for a prosecutor to state a personal belief as to the credibility of a witness. State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). However, a prosecutor may "argue an inference from the evidence, and prejudicial error will not be found unless it is 'clear and unmistakable' that counsel is expressing a personal opinion." Id. (quoting State v. Sargent, 40 Wn. App. 340, 344, 698 P.2d 598 (1985)).

Urrieta contends that the prosecutor erred by stating that he "wanted the truth," arguing that Santiago made a "mistake," and implying that Santiago invented the name Aaron Letho. Brief of Appellant at 26. He asserts that these comments conveyed the message that the prosecutor was personally convinced that Urrieta was lying. We disagree.

The prosecutor stated that he "went after" Urrieta because he "wanted the truth" during his summary of Urrieta's testimony in closing argument. The prosecutor reminded the jury that Urrieta gave inconsistent answers in response to questions concerning Santiago's testimony. In context, the statement about wanting the truth was an inference that at least some of Urrieta's answers were not truthful because the answers continued to change. Similarly, in closing argument, the prosecutor drew the jury's attention to an inconsistency between Santiago's testimony and Officer Hurley's testimony. While Santiago testified that he observed Jacob place a gun under the car seat, Officer Hurley testified that he found not only a gun under the seat, but also a loaded magazine. From this inconsistency, the prosecutor drew the inference that the inconsistency was evidence that Santiago made a "mistake" in his testimony. 1VRP at

138. Thus, because the prosecutor did not unmistakably express a personal opinion, but instead argued an inference from the evidence, there was no error.

Urrieta also asserts that the prosecutor "actively misled the jury by insinuating Santiago was making up the fact that Letho was in the back seat." Brief of Appellant at 27. The record does not support this argument. The prosecutor suggested that Santiago and Urrieta made up the name "Jacob," but he did not dispute that the second back seat passenger was named Aaron Letho.

Next, Urrieta challenges the prosecutor's statements "[t]hey can't do this to you" and "[t]hey underestimate you," as well as his reference to the 20-minute delay in proceedings. Brief of Appellant at 28-29. He asserts that these comments undermined the presumption of innocence by encouraging the jury to be angry at Urrieta and creating an alliance of the State and the jury against Urrieta. We also reject this argument.

A prosecutor must not undermine the presumption of innocence. State v. Evans, 163 Wn. App. 635, 643, 260 P.3d 934 (2011). But a prosecutor "is afforded wide latitude in drawing and expressing reasonable inferences from the evidence, including...arguing inferences about credibility." State v. Millante, 80 Wn. App. 237, 250, 908 P.2d 374 (1995) (citing State v. Hoffman, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991)). Here, although the prosecutor's choice of language was inartful, the challenged statements served to emphasize the timing of Santiago's evidence and the inconsistencies in Urrieta's and Santiago's testimony, leading to the inference that the testimony was not credible. The prosecutor did not encourage the jury to be angry with Urrieta, but

encouraged the jury to consider the credibility of inconsistent information presented for the first time at trial. We find no error.

Next, Urrieta argues that his right to present a complete defense was violated when the trial court denied his motion to recall Officer Drasher. This court reviews a claim of denial of the right to present a defense de novo. State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010) (citing State v. Iniguez, 167 Wn.2d 273, 280-81, 217 P.3d 768 (2009).

A criminal defendant has the right to present relevant evidence. Rock v. Arkansas, 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. A defendant has "'no constitutional right to present irrelevant evidence.'" Jones, 168 Wn.2d at 720 (quoting State v. Gregory, 158 Wn.2d 759, 786 n.6, 147 P.3d 1201 (2006)).

In this case, Urrieta moved to recall Officer Drasher or admit the dispatch record to corroborate that one of the backseat passengers was named Aaron Letho. He argues that evidence concerning Letho's identity was relevant because the presence of a third passenger made it more likely that someone else placed the gun under the driver's seat without Urrieta's knowledge. This argument is unavailing because the presence of three passengers in the car was undisputed. Evidence that Letho had been identified in the police dispatch log had no tendency to make it more or less probable that Urrieta knew the gun was there. The evidence was thus not relevant and the trial court did not violate

9

Urrieta's right to present a defense by denying the motion to recall Officer Drasher or admit the dispatch record.[3]

Next, Urrieta contends that the admission of evidence that he refused consent to a breath alcohol test was manifest constitutional error that may be raised for the first time on appeal.

An error may only be raised for the first time on appeal if it is a manifest error that affects a constitutional right. RAP 2.5(a)(3). See State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007); State v. Scott, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988). When a constitutional error is asserted for the first time on appeal, this court first makes a "cursory determination" as to whether the alleged error in fact implicates a constitutional issue. State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992). If it does, we next examine whether the error is manifest. Id.

In this case, the alleged error affects a constitutional right because, assuming *arguendo* that Urrieta had a constitutional right to refuse a warrantless breath test, [4] admitting evidence of his refusal would penalize him for exercising a constitutional right. State v. Gauthier, 174 Wn. App. 257, 267, 298 P.3d 126 (2013) (trial court improperly admitted evidence that defendant exercised a constitutional right, thereby penalizing him for exercising that right) (appeal after remand, 189 Wn. App. 30, 354 P.3d. 900 (2015)). We therefore consider whether the alleged error was manifest.

---

[3] We also reject Urrieta's argument that the open door doctrine mandated admission because the prosecutor accused Santiago of fabricating Letho's name. As discussed above, his argument is not supported by the record.

[4] We note that our state Supreme Court has accepted review of this issue in State v. Baird, No. 90419-7.

"Manifest" in RAP 2.5(a)(3) requires a showing of actual prejudice. Kirkman, 159 Wn.2d at 935 (citing State v. Walsh, 143 Wn.2d 1, 8, 17 P.3d 591 (2001)). The defendant must plausibly show that "'the asserted error had practical and identifiable consequences in the trial of the case.'" Id., (quoting State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)). Urrieta contends that the error was prejudicial because it affected the jury's determination of credibility. The record does not support this contention. Urrieta testified that he was a convicted felon, that he had been drinking, and that he was driving with a suspended license. His testimony was internally inconsistent and inconsistent with Santiago's testimony. Urrieta's assertion that the jury would likely have found him credible but for the breath alcohol test evidence is not plausible. Because Urrieta has not shown actual prejudice, the asserted error is not manifest and cannot be raised for the first time on appeal.

The failure to show prejudice also precludes Urrieta's argument that he received ineffective assistance of counsel because his attorney failed to object to the breath alcohol test evidence. To prevail on an ineffective assistance of counsel claim, a defendant must prove both (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) that the defective performance resulted in prejudice. State v. Humphries, 181 Wn.2d 708, 719-20, 336 P.3d 1121 (2014) (citing Strickland v. Washington, 466 U.S. 448, 687-88, 108 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "Prejudice" is a "reasonable probability that the result of the proceeding would

have been different" but for the deficient performance. Id. Urrieta cannot show prejudice. He therefore cannot prevail on his ineffective assistance of counsel claim.[5]

Finally, Urrieta argues that the "accumulation of errors" in this case denied him his due process right to a fair trial. Brief of Appellant at 40. Because there was no error, this argument fails.

Affirmed.

WE CONCUR:

Spelman, C.J.

Becker, J.

---

[5] Urrieta also asserts that eliciting the breath test evidence was "yet another instance of prosecutorial misconduct." Brief of Appellant at 38. However, as discussed above, to prevail on a claim of prosecutorial misconduct, Urrieta must show that the asserted error was both improper and prejudicial. Because Urrieta cannot show prejudice, his claim of prosecutorial misconduct is without merit.