IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36379-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DERRICK D. LORRIGAN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Derrick Lorrigan appeals his conviction for possession of a stolen motor vehicle. He argues the trial court's instruction defining "knowledge" violated his right to due process because it permitted the jury to find him guilty based only on constructive knowledge. He also argues prosecutorial misconduct and ineffective assistance of counsel. In affirming, we do not address the merits of his first and third arguments, and we disagree with his second argument.

FACTS

On June 22, 2018, John Sumner reported to police that his 2005 Chevrolet Impala had been stolen. On June 26, 2018, Spokane Police Officer Kelly Mongan saw Sumner's

stolen car pass him. The officer conducted a high-risk traffic stop and detained the driver,

Derrick Lorrigan. Lorrigan told a second police officer he had borrowed the car four days

earlier from Creston Alagard, who had left the keys on the floorboard for him.

Police officers noted the car's ignition had been punched so a shaved key could

start it. Officers also found a key ring in the center console that contained several keys,

most of them tampered with or shaved. No other keys or devices were found in the car

that could have been used by Lorrigan to start it. Lorrigan agreed with an officer that the

situation seemed suspicious, and he should not have driven the car.

PROCEDURE

The State charged Lorrigan with possession of a stolen motor vehicle and making

or possessing a motor vehicle theft tool. The former crime requires the State to prove the

defendant knew the car was stolen. The State proposed the following instruction on

"knowledge":

> A person knows or acts knowingly or with knowledge with respect to
> a fact, circumstance, or result when he or she is aware of that fact,
> circumstance, or result. It is not necessary that the person know that the
> fact, circumstance, or result is defined by law as being unlawful or an
> element of a crime.
> If a person has information that would lead a reasonable person in
> the same situation to believe that a fact exists, the jury is permitted but not
> required to find that he or she acted with knowledge of that fact.

When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

Clerk's Papers (CP) at 20. The court indicated it would give the instruction. Lorrigan did not object.

During closing argument, the deputy prosecutor spoke at length about what Lorrigan knew and also what Lorrigan knew or should have known. We underline the former, and italicize the latter:

[THE STATE:] So what we call the mental element in this particular circumstance, with respect to Count I, is knowledge, right. You've been provided a copy . . . of the Court's definition of what it means to . . . know or act knowingly. And it's a difficult concept at best. [W]e all know about intent and inferring intent and how do you infer intent when you're not the actual witness to it. Well, you look at the [surrounding] circumstances . . . . Same thing is true with knowledge. Okay.

You weren't there, we don't know. We do not know what Mr. Lorrigan knew. We can only look at the evidence and decide and infer what a reasonable person would know or should reasonably know under the circumstances.

And what did Mr. Lorrigan admit? He admitted that, yeah, this probably wasn't a good idea. *He admitted knowing or should have known that, in fact, he admitted or indicated that he should have known better and that he made a stupid mistake. . . .*
. . . .
Does it make common sense? It is reasonable under the circumstances, or should we reasonably infer or conclude that Mr. Lorrigan, on that date, *knew or reasonably should have known the vehicle he picked up and possessed for four days was stolen?*
. . . .

3

How would a reasonable person, placed in that situation, view the fact that there's no key for the vehicle and you have to use a screwdriver to start it, or a shaved key for that matter? Shouldn't that raise some suspicion on the part of the driver that every time he had to turn it over to go somewhere he had to use a screwdriver or a shiv or a shaved key in order to do so? Common sense. What's reasonable? What's reasonable to infer from that evidence?

So at this point it is uncontroverted on the 26th of June 2018 that Mr. Lorrigan was found in possession of a stolen motor vehicle. There's no question about that. There's no question about the fact that it occurred in the State of Washington on that date. The only issue is whether Mr. Lorrigan knew that the vehicle was stolen. That's it. That's it.

. . . .

So Mr. Lorrigan told you that he's known Creston for a while. And what do we know about Mr. Alagard? Mr. Alagard happens to engage in the type of activity that Mr. Lorrigan is well aware of, and that is the cars that are associated with Mr. Alagard typically don't have intact ignitions, that they can be started with screwdrivers . . . . So he admits that the person that loaned him the vehicle is known by Mr. Lorrigan to engage in possession or theft of motor vehicles.

Is it reasonable to infer from that that Mr. Lorrigan *should have known or did know* that he was in possession of a stolen motor vehicle?

. . . .

The issue isn't whether Mr. Lorrigan stole that vehicle. He's not accused of stealing the vehicle. *The issue is whether he knew or reasonably should have known that that was a stolen motor vehicle. If [so] . . . then he's guilty of possession of a stolen motor vehicle.*

. . . .

What happened here? Mr. Lorrigan admitted that he'd known Mr. Alagard or Creston for a year but couldn't provide the contact information, not even the phone number, for the officers to call to confirm that he had lawfully borrowed the vehicle or was in possession of the vehicle. What does common sense tell you under those circumstances? Mr. Lorrigan knew that the vehicle was stolen.

. . . .

4

. . . [A]ll of that is before you, and *the reasonable inference is that Mr. Lorrigan either knew or reasonably should have known that that motor vehicle was stolen* that he was in possession of.

Report of Proceedings (RP) at 226-37. Lorrigan did not object to the above arguments.

The jury found Lorrigan guilty on both counts, and the trial court sentenced Lorrigan to 50 months' confinement. Lorrigan appealed. Lorrigan does not challenge his conviction for making or possessing a motor vehicle theft tool.

ANALYSIS

A.   JURY INSTRUCTION DEFINING "KNOWLEDGE"

Lorrigan argues the trial court's instruction on knowledge violated his right to due process because it permitted the jury to find him guilty based on constructive rather than actual knowledge that the car was stolen. The State argues Lorrigan's claim of error should not be reviewed because he did not object to the instruction below and because it does not raise a manifest error affecting a constitutional right. We agree with the State.

Generally, a defendant cannot challenge a jury instruction on appeal if the defendant did not object to the instruction below. *State v. Salas*, 127 Wn.2d 173, 181, 897 P.2d 1246 (1995). An exception to this rule permits review of an unpreserved error if it involves a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009). Lorrigan did not object to the

5

"knowledge" instruction. Therefore, we must determine whether the purported error involves a manifest error affecting a constitutional right.

Instructional errors are of constitutional magnitude only when the jury is not instructed on every element of the charged crime. *State v. Roggenkamp*, 153 Wn.2d 614, 620, 106 P.3d 196 (2005). As long as the instructions properly inform the jury of the elements of the charged crime, any error in defining the terms used in the elements is not of constitutional magnitude. *State v. Stearns*, 119 Wn.2d 247, 250, 830 P.2d 355 (1992). Even an error defining technical terms does not rise to the level of constitutional error. *State v. Gordon*, 172 Wn.2d 671, 677, 260 P.3d 884 (2011).

Here, Lorrigan does not argue the trial court failed to properly instruct the jury on the elements of possession of a stolen motor vehicle. Rather, he argues the trial court erred in defining "knowledge," one of the elements of that offense. Because the claim of error does not involve a manifest error affecting a constitutional right, we decline to review it.

B.    PROSECUTOR'S REMARKS DURING CLOSING

Lorrigan argues the prosecutor committed misconduct by repeatedly misstating the State's burden of proof,[1] actual knowledge.

---

[1] The State did not misstate the burden of proof. During its early remarks, the

6

The State was required to prove that Lorrigan knew the car was stolen. An instruction also permitted, but did not require, the jury to find actual knowledge if Lorrigan had information that would lead a reasonable person in the same situation to believe the car was stolen.

Here, the deputy prosecutor's argument was at best confusing and at worst improper. During closing, the deputy prosecutor repeatedly alluded to what Lorrigan knew or should have known, once emphasizing Lorrigan was guilty if he "knew or reasonably should have known [it] was a stolen motor vehicle." RP at 235. Yet, the deputy prosecutor twice focused on what Lorrigan actually knew, once emphasizing, "[t]he only issue is whether Mr. Lorrigan knew that the vehicle was stolen. That's it. That's it." RP at 232.

To establish prosecutorial misconduct, Lorrigan must demonstrate the prosecuting attorney's remarks were both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). "A prosecuting attorney commits misconduct by misstating the law." *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). But if a defendant does not object in the trial court, any error is waived, "unless the prosecutor's

---

State acknowledged it had the burden of proving each element of both offenses beyond a reasonable doubt. The claim of error involves the deputy prosecutor's confusing or improper argument about the knowledge element.

7

misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice 'that had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *Thorgerson*, 172 Wn.2d at 455).

We do not think Lorrigan has met this heightened standard. Had Lorrigan objected to the deputy prosecutor's confusing or improper argument and asked for a curative instruction, the trial court could have reiterated the instruction that defined knowledge. This would have had a three-fold effect. First, it would have refocused the jury on the requirement that the State needed to prove actual knowledge. Second, it would have reminded the deputy prosecutor to couch his arguments in proper terms. The arguments would have been very similar and focused on the damaged ignition, the shaved keys, Alagard's association with stolen cars, and Lorrigan's admission that he probably should not have driven the car. Third, it would have clarified to the jury that this evidence permitted, but did not require, it to find that Lorrigan knew the car was stolen.

We distinguish this case from *Allen*, 182 Wn.2d 364, a case on which Lorrigan heavily relies. There, Allen was charged with four counts of aggravated first degree

murder after Clemmons, his friend and boss, shot and killed four police officers.  *Id.* at 369-70.  To prove accomplice liability, the State was required to prove Allen actually knew Clemmons intended to commit the crimes.  Allen attended a Thanksgiving dinner with Clemmons, who was out on bail.  *Id.* at 370.  Allen overheard Clemmons say he would kill police officers if they arrived looking for him.  Three days later, Clemmons contacted Allen and told him they were going to wash the company truck at a car wash.  Allen drove Clemmons to the car wash and went into a minimart.  At the same time, Clemmons went into a coffee shop and shot and killed the officers.  Allen returned to the truck and when Clemmons returned, he said they had to leave.  Allen drove a few blocks, noticed Clemmons was bleeding, and parked and left the truck.

During closing arguments, the prosecuting attorney read the instruction that defined knowledge.  *Id.* at 371.  Similar to this case, the instruction permitted, but did not require, the jury to find the defendant guilty based on information known to him.  The prosecutor then said, "'[f]or shorthand we're going to call that "should have known."'"  *Id.* (alteration in original).  The prosecutor went on to repeatedly and improperly use the phrase "should have known" when describing the definition of "knowledge."  *Id.*  In addition, the prosecutor presented a slideshow that repeatedly referred to a "should have known" standard.  *Id.* at 371-72.  One slide stated, "'You are an accomplice if: . . . you

9

know **or should have known**,'" with the words "or should have known" in bold. *Id.* at 372. Importantly, defense counsel twice objected, and the trial court overruled both objections. *Id.*

During jury deliberations, the jury sent a question to the court: "'If someone "should have known" does that make them an accomplice?'" *Id.* The court, after input from the parties, instructed the jury to refer back to its instructions. *Id.* at 373. The jury returned guilty verdicts on all four counts of first degree murder. On appeal, the Supreme Court reversed, concluding that the prosecuting attorney's arguments were both improper and prejudicial. *Id.* at 373-80.

*Allen* is distinguishable in several ways. Here, the prosecutor did not attempt to redefine the jury instruction on "knowledge" nor was the prosecutor as aggressive in misstating the "knowledge" element. Here, the jury did not express any confusion about the law, and there was strong circumstantial evidence of actual knowledge. Most important, here, Lorrigan failed to object to the prosecutor's argument. This failure to object requires us to apply a heightened standard of review.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

Lorrigan argues he received ineffective assistance of counsel due to his attorney's failure to object to "improper juror instructions that were flagrant and ill intentioned by

10

improper instructions [resulted] in the Defendant not receiving a fair trial . . . especially errors of instruction where the t[r]ier of fact can not survive without knowledge and/or intent by the Defendant." SAG at 1.

An appellate court will not consider a defendant's SAG if it does not inform the court of the nature and occurrence of the alleged errors. RAP 10.10(c). Here, Lorrigan's arguments are too vague for us to review. We cannot tell which instructions and prosecutorial statements Lorrigan believes his attorney should have objected to. Rather than address and perhaps deny his arguments here, it is more appropriate to permit Lorrigan to raise them more coherently in a personal restraint petition.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Korsmo, A.C.J.

11

No. 36379-1-III

FEARING, J. (dissenting) — This court must determine whether the prosecuting attorney uttered mistaken and prejudicial remarks during closing statement such that Derrick Lorrigan should be granted a new trial on charges of possession of a stolen vehicle. Because the State needed to prove beyond a reasonable doubt that Lorrigan possessed actual knowledge of the car being stolen, because the State's attorney frequently suggested to the jury that it could convict on the basis of constructive knowledge of the car being stolen, because the State's evidence emphasized that a reasonable person should have known the car to be stolen, and because the State lacked direct evidence of Lorrigan's possessing actual knowledge of the car being stolen, I would reverse Lorrigan's conviction and remand for a new trial. Therefore, I dissent.

FACTS

The majority abbreviates the facts. Because of the need to address the strength of the State's charge that Derrick Lorrigan actually knew the car to be stolen, I extend the facts.

The prosecution of Derrick Lorrigan arises from the theft of John Sumner's 2005 Chevrolet Impala. On June 22, 2018, Sumner reported the theft to the police. On June 26, Spokane Police Department Officer Kelly Mongan, while on patrol, observed

Sumner's stolen vehicle pass him. Mongan confirmed with radio dispatch the stolen nature of the car.

As Officer Kelly Mongan followed the Chevrolet Impala in Mongan's patrol car, the Impala executed a quick left turn. Officer Mongan characterized the turn as "furtive." Report of Proceedings (RP) at 135. Mongan also turned left, while increasing his speed. The Impala abruptly parked on the side of the road.

Officer Kelly Mongan activated his emergency lights and proceeded to detain the driver of the Impala, Derrick Lorrigan. Lorrigan complied with all commands of Officer Mongan. Lorrigan remained cooperative during his entire intercourse with Mongan and other officers. Lorrigan never asked why Mongan detained him.

Spokane Police Officers Caleb Howard and Chris Lesser, at the request of Officer Kelly Mongan, arrived at the location of the parked Chevrolet Impala. The officers handcuffed Derrick Lorrigan and seated him in the back of a patrol car.

Derrick Lorrigan granted consent for the officers to search the Impala. On the car's console, officers found two sets of keys. One set held four keys, and the other set had five keys. Some, but not necessarily all, keys were shaved. Officers found no Chevrolet key, but they never sought to start the engine with any of the keys found. Officers never asked Derrick Lorrigan how he started the car's engine.

On inspection, the Spokane Police Department officers found no damage to the Impala's seats, tires, dashboard, doors, hood, fender, windows, roof, steering column, or locks. Officers found no flashlight, pry tool, slim jim, or hammer. The car retained its original license plate. Officers could read the Impala's vehicle identification number. The car stereo remained inside and intact. The Impala's ignition sustained damage such that one could start the car's engine without a key. No officer photographed the ignition or the damage to the ignition. No tool was inside the ignition slot. Officers found no title, registration, or insurance card in the Impala.

During questioning by Officer Kelly Mongan, Derrick Lorrigan stated he borrowed the Chevrolet Impala from his friend, Creston Alagard, four days earlier. Lorrigan added that Alagard told him to retrieve the car from the Wedgewood Apartments, and Lorrigan would find the keys to the Impala on the car's floorboard. According to Mongan, Lorrigan did not act or look surprised when Mongan informed him of the stolen status of the car.

Because of his belief that Derrick Lorrigan executed a "furtive" turn, Officer Kelly Mongan questioned Derrick Lorrigan why he made a quick left turn. Lorrigan answered that he had "driving warrants." RP at 165. Nevertheless, Lorrigan then had no present outstanding arrest warrants. Lorrigan had merited an earlier arrest warrant for a driving offense.

3

Officer Chris Lesser also interviewed Derrick Lorrigan, while Lorrigan sat handcuffed in the back of a patrol car. Lorrigan at first denied any damage to the Chevrolet Impala's ignition. He later admitted a dent in the ignition. He agreed that, in hindsight, the dent in the ignition looked suspicious and that he was stupid for driving the car in this condition. Lorrigan confirmed, for Officer Lesser, that Lorrigan gained possession of the Impala from Creston Alagard.

The Spokane Police Department knew of Creston Alagard possessing other stolen vehicles. No officer contacted Alagard to question him about the Chevrolet Impala or his purportedly allowing Lorrigan to borrow the car.

## PROCEDURE

I also expand the outline of the procedure during the prosecution of Derrick Lorrigan. The State of Washington charged Lorrigan with possession of a stolen motor vehicle and making or possessing a motor vehicle theft tool. During trial, Officer Kelly Mongan testified that a reasonable person possesses the key for the car he drives. Officer Chris Lesser added that stolen vehicles commonly suffer damage to the ignition. Lesser opined that it was not possible for Lorrigan not to have known the Impala to be stolen.

At the request of the State of Washington, the trial court delivered jury instruction 10 on the legal meaning of "knowledge":

4

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance, or result.  It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime.
>
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.
>
> When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

Clerk's Papers (CP) at 20.  The trial court took jury instruction 10 from WPIC 10.02.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL

10.02, at 222 (4th ed. 2016) (WPIC).  Derrick Lorrigan did not object to the instruction.

Because of the second of Derrick Lorrigan's assigned errors on appeal, I quote

extensive portions of the prosecuting attorney's closing argument.  At the beginning of

his summation, the prosecuting attorney introduced the jury to the concept of knowledge:

> So what we call the mental element in this particular circumstance, with respect to Count I, is knowledge, right.  You've been provided a copy—provided a—you will have a copy of the Court's definition of what it means to act—to know or act knowingly.  And it's a difficult concept at best.  How do we—we all know about intent and inferring intent and how do you infer intent when you're not the actual witness to it. Well, you look at the circumstances surrounding exactly what we discussed during voir dire.  Same thing is true with knowledge.

RP at 226-27.  The prosecutor then immediately remarked about what Derrick Lorrigan

should have known:

5

> [THE STATE:] You weren't there, we don't know. We do not know what Mr. Lorrigan knew. We can only look at the evidence and decide and infer *what a reasonable person would know or should reasonably know* under the circumstances.
>
> And what did Mr. Lorrigan admit? He admitted that, yeah, this probably wasn't a good idea. *He admitted knowing or should have known* that, in fact, he admitted or indicated that *he should have known better* and that he made a stupid mistake.

RP at 227 (emphasis added). The State's attorney added later:

> You don't just say, hey, you know, I parked my van over—over there, just, you know, go pick it up, you can use it. Really? *Is that reasonable? Does that meet the common sense standard?* Or is that indicative of a situation where you should—the nine out of ten hairs on the back of your neck should go up and go whoa, whoa, whoa, what's wrong with that thing, what's wrong with that vehicle, what's the circumstances surrounding the vehicle, am I driving a stolen vehicle? If you'd ask yourself that question, *then you have to ask is it reasonable*, and then apply that common sense to the evidence to figure it out.

RP at 228-29 (emphasis added).

The prosecuting attorney continued:

> [THE STATE:] Does it make common sense? It is reasonable under the circumstances, or should we reasonably infer or conclude that Mr. Lorrigan, on that date, knew *or reasonably should have known* the vehicle he picked up and possessed for four days was stolen?
> . . . .
> On the 26th, Officer Mongan's just on routine patrol and he sees a vehicle go by that he recognizes matches a listing on the hot sheet for stolen automobiles. So he turns and tries to catch up with it to confirm what's going on, to confirm it's stolen.
> And before he can actually catch up and confirm that it's stolen, what happens? The driver of that vehicle obviously noticed there was an

6

officer back there and started to take evasive action, made a quick turn and parked. Why? What's the reasonable inference from that?

. . . .

*How would a reasonable person*, placed in that situation, view the fact that there's no key for the vehicle and you have to use a screwdriver to start it, or a shaved key for that matter? Shouldn't that raise some suspicion on the part of the driver that every time he had to turn it over to go somewhere he had to use a screwdriver or a shiv or a shaved key in order to do so? Common sense. What's reasonable? What's reasonable to infer from that evidence?

So at this point it is uncontroverted on the 26th of June 2018 that Mr. Lorrigan was found in possession of a stolen motor vehicle. There's no question about that. There's no question about the fact that it occurred in the State of Washington on that date. *The only issue is whether Mr. Lorrigan knew that the vehicle was stolen.* That's it. That's it.

. . . .

Is it reasonable to infer from that that Mr. Lorrigan *should have known or* did know that he was in possession of a stolen motor vehicle?

. . . .

And you get in the vehicle and you have to use a shaved key or you have to use a screwdriver to start it, shouldn't that trigger a concern on your part, *a reasonable concern, a suspicion* that something's not right?

Wouldn't you like to know at that point in time, before you go anywhere, especially if you think your license is suspended, wouldn't you like to know the status—the legal status of that vehicle? You would, unless, of course, you're taking that risk, you're assuming the risk that you're going to be able to drive the vehicle and you're not going to get caught.

. . . .

The issue isn't whether Mr. Lorrigan stole that vehicle. He's not accused of stealing the vehicle. The issue is whether he knew *or reasonably should have known* that that was a stolen motor vehicle.

. . . .

What happened here? Mr. Lorrigan admitted that he'd known Mr. Alagard or Creston for a year but couldn't provide the contact information, not even the phone number, for the officers to call to confirm that he had lawfully borrowed the vehicle or was in possession of the vehicle. *What*

7

*does common sense tell you under those circumstances?  Mr. Lorrigan
knew that the vehicle was stolen.*

. . . .

Body language.  Body language.  Body language, comments, all of
that is before you, and the reasonable inference is that Mr. Lorrigan either
knew *or reasonably should have known* that that motor vehicle was stolen
that he was in possession of.

RP at 229-37 (emphasis added).  Derrick Lorrigan did not object to any of the

prosecutor's closing remarks.  At no time did the prosecution announce that the jury must

find that Lorrigan actually knew the Chevrolet Impala to be stolen or that any inference

of knowledge was permissible, rather than mandatory.

Derrick Lorrigan's trial counsel began his closing statement as follows:

So this case isn't as straightforward as the State argues.  There are a
couple of issues.  First of all, there's an issue of knowledge.  And Mr.
Lindsey [State's counsel] talked to us a little bit about knowledge.
The State has to prove, as part of the elements of the crime of
possession of a stolen motor vehicle, that Mr. Lorrigan knew that the
vehicle that he was driving was stolen at the time that he was stealing—or
at the time that he was driving the stolen vehicle.

. . . .

Now, the State doesn't—talks a lot about reasonableness and actions
and choices.  Reasonableness is different for everyone.  Everyone's lives
are different.

. . . .

Now, actions with regard to Mr. Lorrigan.  Mr. Lindsey brought up
that his actions showed that, you know, he must have known, should have
known this, he pulled off quickly, and he talked about warrants that he
didn't have at the time.  You saw him.  You heard him.  He didn't flee.  He
was cooperative.  He answered questions.  He didn't run.  He wasn't angry.
He didn't have a weapon.  He had actions consistent with exactly what he
said.  He thought he had driving warrants.  And driving warrants, as you

8

heard, can put you in jail.  He had a vehicle that he admittedly borrowed from someone who has cars that he said, himself, start sometimes with objects like screwdrivers.

Now, that doesn't mean he said that he knows that Creston is engaged in stealing motor vehicles or having stolen motor vehicles.

. . . .

There was no indication, other than a dented or punched, or whatever you want to say, ignition that one officer reported seeing to even indicate that this might have been a stolen vehicle, and that nothing in what he said, other than after he was told that this was a stolen vehicle and then acknowledged, oh, well, now that you've said it like that, okay, I feel really stupid, maybe that was suspicious, maybe I should have known.  But hindsight is not enough.  Knowing a guy like Creston is not enough.

The State, in this case, has not met its burden.  It's a high burden. The State has to meet that high burden in order for you to convict Mr. Lorrigan in this case.  The State must prove beyond a reasonable doubt that he was in possession of a stolen motor vehicle, but also that he knew that it was stolen.

RP at 238-48.

The jury convicted Derrick Lorrigan of both possession of a stolen motor vehicle and making or possessing a motor vehicle theft tool.  The trial court sentenced Lorrigan to fifty months' confinement.

## LAW AND ANALYSIS

On appeal, Derrick Lorrigan challenges his conviction for possessing a stolen motor vehicle, but not his conviction for making or possessing a motor vehicle theft tool. Lorrigan challenges his conviction on the ground of an erroneous jury instruction and on the basis of prosecutorial misconduct by reason of misstating the law during closing

argument.  I address these contentions in such order.

Jury Instruction

Derrick Lorrigan argues that jury instruction 10, defining "knowledge," violated due process because it permitted the jury to find Lorrigan guilty of possessing a stolen motor vehicle if he should have known the vehicle was stolen and without a finding that he possessed actual knowledge that the vehicle was stolen.  In other words, the jury could impermissibly convict Lorrigan based on a finding of constructive knowledge.  The State requests that this court deny review of the assigned error because Lorrigan never objected to the instruction during trial.  The State also contends that the definitional instruction for "knowledge" accurately stated the law.

I first address whether Derrick Lorrigan may posit instructional error for the first time on appeal.  An accused may assert instructional errors impacting constitutional rights for the first time on appeal.  RAP 2.5(a)(3); *State v. Bryant*, 89 Wn. App. 857, 871, 950 P.2d 1004 (1998).  Although Lorrigan failed to object to jury instruction 10 at trial, he now contends that the instruction violated his due process rights because the instruction relieved the State of the burden of proving actual knowledge, an element of the crime.  Due process requires the State to prove all elements of the crime beyond a reasonable doubt.  *State v. Smith*, 155 Wn.2d 496, 502, 120 P.3d 559 (2005).  Therefore, convicting the accused of a crime demanding knowing misconduct on a theory of

constructive knowledge is unconstitutional. *State v. Allen*, 182 Wn.2d 364, 374, 341 P.3d

268 (2015); *State v. Shipp*, 93 Wn.2d 510, 515-16, 610 P.2d 1322 (1980). For this

reason, I agree to address the merits of Lorrigan's assignment of error.

I recognize the persuasiveness of Derek Lorrigan's argument as to an erroneous

jury instruction, but the Supreme Court disagrees, and so I must adopt the State's second

argument that jury instruction 10 did not breach the law. The cogency of Lorrigan's

position, however, establishes the confusing and prejudicial nature of the prosecuting

attorney's closing argument and later leads me to wish to reverse on the ground of

prosecutorial misconduct.

RCW 9A.56.068 creates the crime of possessing a stolen motor vehicle. The

statute circularly reads, in part:

> (1) A person is guilty of possession of a stolen vehicle if he or she
> possess [possesses] a stolen motor vehicle.

In turn, RCW 9A.56.140(1) defines "possessing stolen property":

> (1) "Possessing stolen property" means *knowingly* to receive, retain,
> possess, conceal, or dispose of stolen property *knowing* that it has been
> stolen and to withhold or appropriate the same to the use of any person
> other than the true owner or person entitled thereto.

(Emphasis added.) Washington courts apply the definition of "possessing stolen

property" found in RCW 9A.56.140(1) to the crime of possessing a stolen vehicle. *State

v. Lakotiy*, 151 Wn. App. 699, 714, 214 P.3d 181 (2009). Thus, the State must establish

11

two elements of possession of a stolen vehicle with a mens rea of knowledge. *State v.*

*Lakotiy*, 151 Wn. App. at 714. The State must prove beyond a reasonable doubt that the

accused knew that he possessed the car and that the accused knew the vehicle to be

stolen.

We go elsewhere for the definition of "knows," "knowing," and "knowingly."

RCW 9A.08.010(1) declares:

> (b) KNOWLEDGE. A person *knows* or acts *knowingly* or *with knowledge* when:
> (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
> (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

(Emphasis added.) The Washington Legislature adopted this definition in the Criminal

Code of 1975. This definition of "knowledge" applies to all crimes with a mens rea of

knowledge, including the crime of possession of a stolen vehicle under RCW 9A.56.068.

Subsection (ii)'s statutory definition of "knowledge" unmistakably suggests the trier of

fact may convict one of a crime requiring knowledge, based on constructive knowledge

alone.

*State v. Shipp*, 93 Wn.2d 510 (1980), confronted the implementation of

RCW 9A.08.010(1)(b)(ii)'s language allowing a conviction of a crime with a mens rea of

"knowledge" based on constructive knowledge. *Shipp* involved three consolidated cases

12

for appeal. In each case, the trial court instructed the jury to find that the accused

possessed knowledge of a fact if "'he has information which would lead a reasonable

man in the same situation to believe that facts exist.'" *State v. Shipp*, 93Wn.2d at 514

(quoting former RCW 9A.08.010(1)(b)(ii) (1975)). Thus, the trial courts inserted into

jury instructions the language found in RCW 9A.08.010(1)(b)(ii). Nevertheless, the

Supreme Court held that the trial courts misinterpreted the statute. One wonders how a

court misinterprets a statute by quoting the statute verbatim.

The Supreme Court, in *State v. Shipp*, hypothesized that a juror could interpret the

challenged jury instructions in three ways. The court wrote:

> First, the juror might believe that if he concludes that the defendant
> had received information which would impart knowledge to a reasonable
> person then he must find, as a mandatory presumption, that the defendant
> had knowledge. This interpretation of the instruction would not allow the
> juror to consider the subjective intelligence or mental condition of the
> defendant.
> Second, the juror might believe that, for the purposes of the law, the
> familiar word "knowledge" is redefined to be different from its ordinary
> meaning. That is, if an ordinary person in the defendant's situation would
> have known a fact, then the defendant is deemed to have had "knowledge"
> under the law, even if he was so unperceptive or inattentive that he did not
> have knowledge in the ordinary sense.
> Third, the juror might believe, from the instructions as a whole, that
> he must find that the defendant had actual knowledge, and that he is
> permitted, but not required, to find such knowledge if he finds that the
> defendant had "information which would lead a reasonable man in the same
> situation to believe that [the relevant] facts exist."

*State v. Shipp*, 93 Wn.2d at 514. One struggles to divine a practical difference between hypotheticals one and two. Each of the two scenarios imposed a constructive knowledge standard against the accused.

Instead of declaring RCW 9A.08.010(1)(b)(ii) unconstitutional, the *Shipp* court declared the first and second interpretations of the statute as unconstitutional. Before *Shipp*, one might have thought courts render statutes, not interpretations of statutes, unconstitutional. Nevertheless, courts must interpret a statute as constitutional, if possible. *City of Shoreline v. McLemore*, 193 Wn.2d 225, 231, 438 P.3d 1161, *cert. denied*, 140 S. Ct. 673, 205 L. Ed. 2d 438 (2019).

The *Shipp* court's first interpretation of RCW 9A.08.010(1) allowed the jury to convict the accused of a crime based on a presumption in violation of the due process clause that requires the State to affirmatively prove each element of the crime. The second interpretation, despite having no meaningful distinction from the first interpretation, was unconstitutional for a different reason. The second interpretation wrested the word "knowledge" from its accepted meaning of actual knowledge such that the ordinary person would be misled by the statute's meaning. Thus, the common person would lack adequate notice of the prohibitions created by the statute, which insufficient notice breached the due process clause. The court wrote:

14

This interpretation of the statute, as redefining knowledge, is also unconstitutional. Statutes which define crimes must be strictly construed according to the plain meaning of their words to assure that citizens have adequate notice of the terms of the law, as required by due process. "Men of common intelligence cannot be required to guess at the meaning of the enactment." The word "knowledge" has an ordinary and accepted meaning. A statutory redefinition of knowledge to mean negligent ignorance would completely contradict the accepted meaning. This redefinition does not appear in the same section or even in the same chapter as any of the sections which specify the elements of the crimes. The ordinary person reading one of the criminal statutes would surely be misled if the statute defining knowledge were interpreted to effect such a drastic change in meaning.

*State v. Shipp*, 93 Wn.2d at 515-16 (citations omitted). The court did not wish to charge citizens with the task of searching throughout the criminal code for definitions of words written in the text of a crime.

In *State v. Shipp*, the Supreme Court avoided declaring RCW 9A.08.010(1)(b)(ii) unconstitutional by claiming the statute created a permissible presumption of actual knowledge by a finding of constructive knowledge. Thus, according to the court, the third reading survived due process scrutiny.

Because the *Shipp* court ruled that the third interpretation of RCW 9A.08.010(1)(b)(ii)'s definition of "knowledge" was the only interpretation to pass muster, the court declared the interpretation to conflict with the jury instruction delivered by each trial court, despite the instruction echoing the language of the statute. The court's third hypothetical allowed a juror to presume, but did not demand that the juror

15

presume, the accused possessed actual knowledge if he had constructive knowledge.  But the jury instruction directed the juror to find knowledge if the accused held "information which would lead a reasonable man in the same situation to believe that [the relevant] facts exist." *State v. Shipp*, 93 Wn.2d at 514.  The challenged instruction did not afford the juror an option of finding or not finding knowledge based on constructive knowledge.  The jury instruction in effect created a mandatory presumption.

One should probe, as did dissenting members of the Supreme Court, the reasoning behind *State v. Shipp*.  RCW 9A.08.010(1)(b)(ii) directs the juror to find knowledge based on constructive knowledge.  RCW 9A.08.010(1)(b)(ii) does not hint of any permissible presumption.  The statute affords a juror no choice.

The *Shipp* decision should be faulted on other grounds.  The *Shipp* creation of a presumption imposes an impossible task on lay jurors to understand and navigate between constructive knowledge and actual knowledge.  A jury instruction based on the *Shipp* permissible presumption tells the juror not to convict the accused on what a reasonable person should know, but then tells the juror he or she may convict the accused on what a reasonable person should know.  The jury instruction does not give the juror any guidelines as to when to exercise the presumption that constructive knowledge parallels actual knowledge.  The jury instruction fails to identify any underlying facts needed to be found by the jury to find the overarching fact of knowledge.  Thus, the

16

*Shipp* ruling with its presumption leaves a juror unmoored and frees the juror to apply the presumption, based on unlimited reasons, and convict a person, no matter how gullible or stupid. Allowing a juror the option of presuming actual knowledge if he or she finds constructive knowledge essentially allows a juror to convict on actual knowledge, which violates the constitution.

The due process clause of the Fourteenth Amendment to the United States Constitution protects the accused against conviction except on proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). This bedrock, axiomatic, and elementary constitutional principle prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *Sandstrom v. Montana*, 442 U.S. 510, 520-24, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *Patterson v. New York*, 432 U.S. 197, 210, 215, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). Thus, the State may not convict on a mandatory presumption. *Francis v. Franklin*, 471 U.S. 307, 313, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985). A jury instruction may create a permissive inference of guilt. *Ulster County Court v. Allen*, 442 U.S. 140, 157-63, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979). A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to

17

draw that conclusion. *Francis v. Franklin*, 471 U.S. at 314. The jury may find an element of the crime based on proof by the State of another basic fact. *Ulster County Court v. Allen*, 442 U.S. 140, 156 (1979). Nevertheless, that element must, with substantial assurance, likely flow from the basic fact. *Leary v. United States*, 395 U.S. 6, 36, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969).

The jury instruction delivered to Derrick Lorrigan's jury did not list any predicate facts on which the jury could draw an inference of actual knowledge, but instead left the decision to apply the presumption to the jury's discretion. The instruction referenced information that would lead a reasonable person in the same situation to believe the car to be stolen, but does not identify any such information.

One might argue that the jury instruction allowed the jury to reach the elemental fact of actual knowledge by finding the basic fact of Derrick Lorrigan possessing information that would lead a reasonable person to believe the car to be stolen. But then the instruction and presumption becomes circular. To repeat, the jury can conclude Lorrigan has actual knowledge simply by finding constructive knowledge. The jury is not told of any basic facts on which it may find either actual knowledge or constructive knowledge. Viewing the elemental fact as one of constructive knowledge also arrives at the same problem noted in *State v. Shipp*—that the ordinary person would not know what

18

is prohibited because no one knows what information a jury might find to lead to constructive knowledge of a car being stolen.

Of course the State often encounters obstacles in proving an accused has actual knowledge of a fact, particularly since the accused need not testify, and, if he or she testifies, can deny any knowledge. The State must ordinarily prove knowledge by presenting circumstantial evidence such that the jury may draw inferences from the accused's statements and action. Still, the standard jury instruction on circumstantial evidence should suffice to address this difficulty.

The *Shipp* court concluded that "[t]he jury must still find subjective knowledge." 93 Wn.2d at 517. The Supreme Court did not, however, direct the trial court to deliver a jury instruction informing the jury that it must find subjective knowledge. The Supreme Court never suggested any appropriate instruction. The instruction reviewed in *Shipp* contained the additional fatal flaw of never informing the jury that, regardless of whether it wishes to employ a presumption, it must in the final analysis find actual knowledge of the car being stolen.

After issuance of *State v. Shipp*, the Washington committee on jury instructions revised WPIC 10.02, the second paragraph of which reads:

> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

19

Consistent with *State v. Shipp*, the standard instruction allows the jury to convict based on a guideless permissible presumption. More importantly, the instruction does not demand that the jury find subjective knowledge.

In *State v. Leech*, 114 Wn.2d 700, 790 P.2d 160 (1990), the Washington Supreme Court compounded its error begun in *State v. Shipp*. In a prosecution for first degree arson, the trial court delivered the revised WPIC 10.02. Clyde Leech argued the unconstitutionality of the instruction. The court declared the instruction valid based on the teaching of *State v. Shipp*. This court has often approved WPIC 10.02. *State v. Bryant*, 89 Wn. App. 857, 872, 950 P.2d 1004 (1998); *State v. Barrington*, 52 Wn. App. 478, 485, 761 P.2d 632 (1988); *State v. Rivas*, 49 Wn. App. 677, 689, 746 P.2d 312 (1987); *State v. Kees*, 48 Wn. App. 76, 82, 737 P.2d 1038 (1987); *State v. Gogolin*, 45 Wn. App. 640, 647, 727 P.2d 683 (1986); *State v. Davis*, 39 Wn. App. 916, 919-20, 696 P.2d 627 (1985).

*State v. Allen*, 182 Wn.2d 364, 341 P.3d 268 (2015), involved a similar instruction. In *State v. Allen*, the State prosecuted Darcus Allen for being an accomplice to aggravated first degree murder. The State needed to prove beyond a reasonable doubt that Allen knew the homicide victims to be police officers. The trial court delivered WPIC 10.02. The Supreme Court reversed the conviction, not because of an erroneous

jury instruction, but because the prosecutor repeatedly referenced a "should have known"

or objective standard of knowledge during summation.

At the request of the State, Derrick Lorrigan's trial court delivered jury instruction

10 on the legal meaning of "knowledge":

> A person knows or acts knowingly or with knowledge with respect
> to a fact, circumstance, or result when he or she is aware of that fact,
> circumstance, or result. It is not necessary that the person know that the
> fact, circumstance, or result is defined by law as being unlawful or an
> element of a crime.
> If a person has information that would lead a reasonable person in
> the same situation to believe that a fact exists, the jury is permitted but not
> required to find that he or she acted with knowledge of that fact.
> When acting knowingly as to a particular fact is required to establish
> an element of a crime, the element is also established if a person acts
> intentionally as to that fact.

CP at 20. Jury instruction 10 was identical to WPIC 10.02.

Despite my disagreement with *State v. Shipp*, I follow the decision's holding.

Once the Supreme Court decides an issue of state law, that interpretation is binding on all

lower courts until it is overruled by the Supreme Court. *State v. Gore*, 101 Wn.2d 481,

487, 681 P.2d 227 (1984). I thus find no instructional error.

Prosecutorial Misconduct

Now comes the difficult question. Derrick Lorrigan argues that, even assuming

jury instruction 10 to be a correct statement of the law, the prosecutor committed

misconduct by repeatedly misstating the State's burden of proof on actual knowledge.

21

According to Lorrigan, the prosecuting attorney sometimes expressly, and sometimes impliedly, informed the jury that it should convict Lorrigan on a mere finding that Lorrigan should have known the Impala to be stolen. Therefore, the prosecutor lowered the State's burden to prove beyond a reasonable doubt actual knowledge.

To resolve a claim of prosecutorial misconduct, a court must first inquire whether the prosecutor made improper comments. Then, if such comments were made, the reviewing court must inquire as to whether they were prejudicial to the defendant. *State v. Lindsay*, 180 Wn.2d 423, 431, 326 P.3d 125 (2014). Actually, a showing of prejudice may not even suffice for a new trial.

A prosecuting attorney commits misconduct by misstating the law. *State v. Allen*, 182 Wn.2d at 373. The prosecuting attorney misstating the law of the case to the jury constitutes a serious irregularity bearing a grave potential to mislead the jury. *State v. Davenport*, 100 Wn.2d 757, 762-63, 675 P.2d 1213 (1984).

To determine if Derrick Lorrigan's prosecuting attorney misstated the law, I dissect statements uttered by the prosecuting attorney during closing and challenged by Derrick Lorrigan. I juxtapose those statements with other remarks of the State's attorney that the State emphasizes as employing the correct standard of law.

Near the beginning of his summation, the State's attorney remarked:

22

> So what we call the mental element in this particular circumstance, with respect to Count I, is knowledge, right. You've been provided a copy—provided a—you will have a copy of the Court's definition of what it means to act—to know or act knowingly. And it's a difficult concept at best.

RP at 226-27. To his credit, the prosecuting attorney referred to jury instruction 10 that accurately defined the law based on *State v. Shipp*, albeit confusing law, with regard to the concept of "knowledge." The instruction informed the jury that Derrick Lorrigan must have known the car to be stolen in order to convict him of the crime of possession of a stolen motor vehicle. Nevertheless, the instruction further informed the jury that if a reasonable person would have believed the vehicle to be stolen, the jury may find knowledge of the fact. Further, despite mentioning the jury instruction, the prosecutor did not discuss, at this stage of his summation, the difference between actual knowledge, a subjective standard, and constructive knowledge, an objective standard of reasonableness. The prosecutor did not inform the jury that it still must find actual or subjective knowledge. The prosecutor gave the jury no guidance as to whether it should apply the permissible presumption based on what Lorrigan should have known. Jury instruction 10 also did not answer these questions.

The State's attorney next intoned:

23

> You weren't there, we don't know. We do not know what Mr.
> Lorrigan knew. We can only look at the evidence and decide and infer
> what a reasonable person would know *or should reasonably know* under the
> circumstances.

RP at 227 (emphasis added). The prosecuting attorney again did not expressly reference

actual knowledge or constructive knowledge being the standard for the jury to determine

if Derrick Lorrigan knew the Impala to be stolen. Instead, the prosecutor told the jury

that it will never know what Lorrigan knew at the time. This argument suggested to the

jury that it must apply a constructive knowledge standard because it cannot reach inside

the brain of Lorrigan to determine his knowledge. The argument did not ask the jury to

determine knowledge based on circumstantial evidence.

Shortly thereafter, the deputy prosecuting attorney remarked:

> And what did Mr. Lorrigan admit? He admitted that, yeah, this
> probably wasn't a good idea. *He admitted knowing or should have known*
> that, in fact, he admitted or indicated that *he should have known better* and
> that he made a stupid mistake.

RP at 227 (emphasis added). The State's attorney seemed to conflate the concepts of

actual knowledge and constructive knowledge as if the two are the same. One could

conclude that the prosecutor asked the jury to convict on constructive knowledge.

Later, the State's attorney expanded:

> I [Creston Alagard, Derrick Lorrigan's purported lender of the car]
> parked my van over—over there, just, you know, go pick it up, you
> [Lorrigan] can use it. Really? Is that reasonable? *Does that meet the*

24

> *common sense standard?* Or is that indicative of a situation where you should—the nine out of ten hairs on the back of your neck should go up and go whoa, whoa, whoa, what's wrong with that thing, what's wrong with that vehicle, what's the circumstances surrounding the vehicle, am I driving a stolen vehicle? If you'd ask yourself that question, then you have to ask is it reasonable, and then apply that common sense to the evidence to figure it out.

RP at 228-29 (emphasis added). The State's attorney referred to a common sense standard. A common sense standard implied a constructive knowledge standard, particularly when the prosecutor referred to what is reasonable in the prior sentence. Twice the prosecutor asked the jury to determine what is reasonable. Furthermore, the deputy prosecuting attorney never mentioned that the jury could elect not to find knowledge based on a reasonable person standard.

The prosecutor later observed for the jury:

> Does it make common sense? It is reasonable under the circumstances, or should we reasonably infer or conclude that Mr. Lorrigan, on that date, knew *or reasonably should have known* the vehicle he picked up and possessed for four days was stolen?

RP at 229 (emphasis added). The State's attorney strongly suggested the jury can convict on an objective standard of knowledge. The prosecutor argued that the jury should convict if the jury found that Derrick Lorrigan should have reasonably concluded that the vehicle was stolen.

The deputy prosecutor added:

25

> *How would a reasonable person*, placed in that situation, view the
> fact that there's no key for the vehicle and you have to use a screwdriver to
> start it, or a shaved key for that matter? Shouldn't that raise some suspicion
> on the part of the driver that every time he had to turn it over to go
> somewhere he had to use a screwdriver or a shiv or a shaved key in order to
> do so? *Common sense. What's reasonable? What's reasonable to infer
> from that evidence?*

RP at 231-32 (emphasis added). Again, the prosecutor strongly suggested that Derrick

Lorrigan was guilty if a reasonable person would have known the car to be stolen.

The prosecuting attorney later expanded and expounded:

> So at this point it is uncontroverted on the 26th of June 2018 that Mr.
> Lorrigan was found in possession of a stolen motor vehicle. There's no
> question about that. There's no question about the fact that it occurred in
> the State of Washington on that date. *The only issue is whether Mr.
> Lorrigan knew that the vehicle was stolen.*

RP at 232 (emphasis added). To his credit, the State's attorney might have been telling

the jury then that the State must show actual knowledge. But the prosecutor did not

inform the jury that the question was whether Derrick Lorrigan actually knew the vehicle

to be stolen. A juror might have concluded that, based on the prosecuting attorney's

earlier comments, he or she could convict based on what a reasonable person would

know particularly since the State's attorney's repeatedly referenced a reasonable person

standard.

The State's attorney next commented:

26

> Is it reasonable to infer from that that Mr. Lorrigan *should have known or* did know that he was in possession of a stolen motor vehicle?

RP at 234 (emphasis added).  The prosecuting attorney returned to commingling actual knowledge with reason to know.  The State's counsel repeated the conflation:

> And you get in the vehicle and you have to use a shaved key or you have to use a screwdriver to start it, shouldn't that trigger a concern on your part, *a reasonable concern, a suspicion* that something's not right?

RP at 234 (emphasis added).

Near the close of closing, the deputy prosecutor intoned:

> The issue isn't whether Mr. Lorrigan stole that vehicle.  He's not accused of stealing the vehicle.  The issue is whether he knew *or reasonably should have known* that that was a stolen motor vehicle.

RP at 235 (emphasis added).  The State's attorney strongly suggested to the jury to convict based on whether Derrick Lorrigan should have reasonably known the Impala to be stolen.  But then the prosecutor may have changed tone:

> *What does common sense tell you under those circumstances?  Mr. Lorrigan knew that the vehicle was stolen.*

RP at 236 (emphasis added).  This remark may have suggested that the jury must find actual knowledge.

The prosecuting attorney ended his summation:

> Body language, comments, all of that is before you, and the reasonable inference is that Mr. Lorrigan either knew *or reasonably should have known* that that motor vehicle was stolen that he was in possession of.

27

RP at 237 (emphasis added). Thus, in the prosecuting attorney's last comment about the test for knowledge, the prosecuting attorney returned to the theme of convicting Lorrigan based on what he should have reasonably known.

In rejoinder to Derrick Lorrigan's appeal, the State characterizes the deputy prosecutor's closing remarks, when discussing knowledge, as "ill-phrased." The State contends that the prosecuting attorney sought to explain the permissive inference contained within the instruction defining "knowledge"—that, "a person has information that would lead a reasonable person in the same situation to believe that a fact exists," which is described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge of that fact. According to the State, its trial counsel stated at least four times that the jury had to find Lorrigan actually knew the vehicle was stolen in order to convict him. I disagree.

Throughout the State attorney's summation, he never expressly told the jury that it must convict if it finds constructive knowledge of the Impala being stolen. Nevertheless, the prosecutor never informed the jury that deciding what is reasonable is permissible, but not mandatory, to reach actual knowledge. At no time did the prosecutor tell the jury that it may use an inference of what a reasonable person would know only to the extent that the jury concluded beyond a reasonable doubt that Derrick Lorrigan had actual knowledge of the Impala being stolen. At no time did the prosecuting attorney expressly

tell the jury that constructive knowledge did not suffice for a conviction and that the State must prove actual, or subjective, knowledge. Instead, the summation repeatedly associated actual knowledge with constructive knowledge or what a reasonable person would know.

On the one hand, one might conclude that, based on RCW 9A.08.010(1)(b)(ii) and *State v. Shipp*, the prosecuting attorney holds the prerogative to ask the jury, when the State charges the defendant with a crime requiring a mens rea of knowledge, to convict on constructive knowledge. On the other hand, despite the statutory definition and because of *State v. Shipp*, the prosecuting attorney should qualify such an argument with the caution to the jury to convict only on subjective knowledge.

*State v. Allen*, 182 Wn.2d 364 (2015), previously mentioned, informs our decision. In *State v. Allen*, a prosecution for being an accomplice to aggravated first degree murder, the State needed to prove beyond a reasonable doubt that Darcus Allen knew the murder victims to be police officers. The prosecuting attorney, during summation, repeatedly used the phrase "should have known" when describing the definition of "knowledge." The Washington Supreme Court concluded that the "should have known" standard is incorrect because the jury must find that the defendant *actually* knew. *State v. Allen*, 182 Wn.2d at 375.

*State v. Allen* has distinguishing features. First, in *Allen*, the prosecuting attorney presented a slide show that repeatedly included a "should have known" standard. Second, Darcus Allen's defense counsel objected to the State attorney's remarks about constructive knowledge. Third, Allen's jury sent a question during deliberation that indicated that the jury was unsure whether to convict Allen using the incorrect "should have known" standard. *State v. Allen*, 182 Wn.2d at 378. Fourth, spectators wore T-shirts declaring that the victims will not be forgotten. I find these distinctions unimportant. The wearing of T-shirts constituted a separate basis for reversal of Allen's conviction. Derrick Lorrigan's prosecutor referenced the "should have known" standard as often as Darcus Allen's prosecutor. Lorrigan's jury may not have sent the court a question because it instead quickly concluded, without any questioning or confusion, to convict based on constructive, not actual, knowledge.

Since I conclude that Derrick Lorrigan's prosecuting attorney committed prosecutorial misconduct, I must next measure the extent of the misconduct and resultant prejudice. Lorrigan's trial counsel failed to object to the misleading comments of the prosecutor concerning the standard for guilt. Different rules reign concerning the nature of the misconduct the appellant must show to gain a new trial depending on whether defense counsel objected at trial.

On the one hand, the failure to object should not and will not prevent a reviewing court from protecting a defendant's constitutional right to a fair trial. *State v. Walker*, 182 Wn.2d 463, 477, 341 P.3d 976 (2015). On the one hand, the law encourages a party to raise objections at trial rather than for the first time on appeal. *State v. Russell*, 125 Wn.2d 24, 93, 882 P.2d 747 (1994). To prevail on appeal on a claim of prosecutorial misconduct when the defense objected below, a defendant must show that the prosecutor's comments were improper and that the comments were prejudicial. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007); *State v. Russell*, 125 Wn.2d at 85. But if defense counsel failed to object to the misconduct at trial, the defendant on appeal must show more than a misstatement of the law and some prejudice. Courts consider the claim of prosecutorial misconduct waived on appeal unless the misconduct is so flagrant and ill intentioned that it evinces an enduring prejudice the trial court could not have cured by an instruction. *State v. Gregory*, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014); *State v. Evans*, 163 Wn. App. 635, 642-43, 260 P.3d 934 (2011).

Because of Derrick Lorrigan's attorney's failure to object to the prosecutor's comments permitting a conviction based on constructive knowledge, this appeal tasks the court with determining whether the prosecuting attorney's misconduct was flagrant and

ill intentioned and whether Lorrigan suffered enduring prejudice. I question our ability to do so.

"Ill-intentioned" means "having malicious intentions." Dictionary.com, http://www.dictionary.com/browse/ill-intentioned (last visited Apr. 1, 2020). A prosecutor will likely never concede to malevolent intent. Thus, a reviewing court enters a quagmire when attempting to discern the intentions of a prosecuting attorney.

The misconduct of the prosecutor must also be flagrant. "Flagrant" is something considered "wrong or immoral[,] conspicuously or obviously offensive." Oxford English Dictionary Online, https://en.oxforddictionaries.com/definition/flagrant (last visited Apr. 1, 2020). Characterizing a prosecuting attorney's conduct as flagrant also is problematic. Reviewing courts wish not to impugn any attorney with a ruling that the attorney engaged in flagrant, malicious behavior. This reluctance particularly extends to a prosecuting attorney who is a representative of the State of Washington and either an elected official or the deputy of an elected official. Assessing whether prosecutorial misconduct is flagrant and ill intentioned imposes an embarrassing and difficult duty on a reviewing court particularly when the appellate judges were not present during trial.

Despite the "ill intentioned" standard, our Supreme Court has directed us not to delve into the mind of the prosecutor. The Supreme Court has written twice that we should not focus on the prosecutor's subjective intent in committing misconduct, but

32

instead on whether the defendant received a fair trial in light of the prejudice caused by the violation of existing prosecutorial standards and whether that prejudice could have been cured with a timely objection. *State v. Walker*, 182 Wn.2d 463, 478 (2015); *State v. Emery*, 174 Wn.2d 741, 762 (2012). This direction conflicts with the common understanding of "ill intentioned" being subjective in nature. Intentions are always subjective. But I chose to follow *Walker*'s teaching of avoiding undisclosed motives, particularly because of the difficulty and embarrassing nature of finding flagrant attorney behavior.

At least two Washington courts have noted one factor to consider when determining if improper prosecutorial arguments were flagrant and ill intentioned. An argument should be so characterized when a Washington court previously recognized those same arguments as improper in a published opinion. *State v. Johnson*, 158 Wn. App. 677, 685, 243 P.3d 936 (2010); *State v. Fleming*, 83 Wn. App. 209, 213-14, 921 P.2d 1076 (1996). In *State v. Fleming*, the prosecuting attorney told the jury that to acquit the defendants of rape, the jury must find that the victim lied or was confused. This court held the misconduct to be flagrant because the prosecutor uttered the argument two years after an opinion proscribing the argument.

Because of the rule in *State v. Johnson* and *State v. Fleming*, I conclude that Derrick Lorrigan's prosecutor engaged in flagrant and ill-intentioned conduct. At least

one Supreme Court decision, *State v. Allen*, 182 Wn.2d 364 (2015), issued before Derrick

Lorrigan's trial, held that a prosecuting attorney should not mention to a jury to convict

an accused of a crime requiring knowledge based on what the accused should have

known. The State attorney should have carefully followed the strictures of *Allen* and

expressly told the jury not to convict on constructive knowledge.

Remember that, in the end, the defendant must show the prosecutorial misconduct

resulted in enduring prejudice, if counsel raised no objection. The rule of prosecutorial

misconduct is often phrased as requiring the defendant to demonstrate that the

prosecutor's remark was so flagrant and ill intentioned that no curative instruction would

have been capable of neutralizing the resulting prejudice. *State v. Gregory*, 158 Wn.2d at

841 (2006); *State v. Evans*, 163 Wn. App. at 642-43 (2011).

I conclude that Derrick Lorrigan's trial court could not have cured the prejudice

resulting from the State attorney's closing argument with another jury instruction. The

court already instructed the jury in accordance with precedent and standard instructions

that the jury must find knowledge, but that the jury may infer knowledge by constructive

knowledge. The court would only repeat the previously delivered instruction. This

predicament illustrates that, although the prosecutor's closing misstated the law, the

underlying problem with Lorrigan's conviction lies with the presumption erroneously

created in *State v. Shipp* more than the prosecuting attorney's closing statement.

34

I also would reverse Derrick Lorrigan's conviction because I question how a reviewing court can adjudge whether the jury would still have convicted the defendant if the prosecutor had not engaged in the misconduct. A jury consists of twelve representatives of the community, with each juror being influenced differently by evidence and argument. Appellate judges' pampered existence in an ivory tower disqualifies them from being representatives of the community. As one earlier court observed:

> It is highly improper for courts, trial or appellate, to speculate upon what evidence appealed to a jury. Jurors and courts are made up of human beings, whose condition of mind cannot be ascertained by other human beings. Therefore, it is impossible for courts to contemplate the probabilities any evidence may have upon the minds of the jurors.

*State v. Robinson*, 24 Wn.2d 909, 917, 167 P.2d 986 (1946). If the parties wanted judges to sit in the seat of jurors and recreate the thoughts of jurors, the parties would have waived a jury trial.

The rule that the defendant must show that a curative instruction could not prevent prejudice assumes that a curative instruction helps. The rule is based on the presumption that the jury follows the court's instruction. *State v. Stein*, 144 Wn.2d 236, 247, 27 P.3d 184 (2001). Many jurists question the efficacy of a curative instruction under any circumstances. United States Supreme Court Justice Robert Jackson wrote: "The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all

35

practicing lawyers know to be unmitigated fiction." *Krulewitch v. United States*, 336

U.S. 440, 453, 69 S. Ct. 716, 93 L. Ed. 790 (1949) (Jackson, J., concurring), *quoted in*

*State v. Arredondo*, 188 Wn.2d 244, 280, 394 P.3d 348 (2017) (Gonzalez, J., dissenting);

*State v. Newton*, 109 Wn.2d 69, 74 n.2, 743 P.2d 254 (1987); *State v. Craig*, 82 Wn.2d

777, 789, 514 P.2d 151 (1973) (Stafford, J., dissenting).

Another way of assaying prejudice is the strength of the State's evidence. In

analyzing prejudice resulting from prosecutorial misconduct, the reviewing court does

not look at the comments in isolation, but in the context of the total argument, the issues

in the case, the evidence, and the instructions given to the jury. *State v. Warren*, 165

Wn.2d 17, 28, 195 P.3d 940 (2008); *State v. Yates*, 161 Wn.2d at 774. When applying

this standard, the court usually measures the strength of the State's evidence of guilt.

*State v. Barry*, 183 Wn.2d 297, 303, 352 P.3d 161 (2015).

Derrick Lorrigan's prosecuting attorney's misleading statement of the law should

be considered with evidence presented by the State. In what might have been

impermissible opinion evidence, Officer Kelly Mongan testified that a reasonable person

possesses the key for the car he drives. Officer Chris Lesser added that stolen vehicles

commonly retain damage to the ignition. Officer Lesser further opined that it was not

possible for Lorrigan not to have known the Chevrolet Impala to be stolen. The State's

presentation centered on what a reasonable person would know. The testimony,

combined with the prosecuting attorney's summation, would significantly influence the jury and lead it to convict based on constructive knowledge.

I might affirm if the State presented overwhelming evidence. Nevertheless, the State does not argue it presented strong or overwhelming evidence of actual knowledge. The State simply argues that the evidence sufficed to convict Derrick Lorrigan. The question raised by prosecutorial misconduct is not whether there is sufficient evidence to convict. *State v. Allen*, 182 Wn.2d 364, 376 (2015).

The State emphasizes Derrick Lorrigan's concession to law enforcement officers that, in retrospect, he acted stupidly when driving the vehicle, the peculiar location of the Impala when Lorrigan purportedly gained possession, Lorrigan's furtive driving maneuver, and the fact that Lorrigan had to utilize a screwdriver or shaved key to start the Impala. Of course, this evidence tends to support a conviction based on constructive knowledge, more than on actual knowledge.

Evidence favorable to Derrick Lorrigan counters evidence underscored by the State. Other than jimming of the ignition, the Chevrolet Impala lacked damage. The stereo system remained inside. Law enforcement found no flashlight, pry tool, slim jim, hammer, or switched plates. Lorrigan did not flee when Officer Kelly Mongan activated his emergency lights, and Lorrigan cooperated with all officers. The officers never attempted to locate or interview Creston Alagard in order to compare Alagard's story

37

with Lorrigan's factual claim. Lorrigan conceded stupidity, but he never acknowledged

knowledge of the Impala being stolen.

_Fearing, J._

Fearing, J.